███████████████████████

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CA, INC. and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED, | Case No. 2:21-cv-00080-JRG-RSP |
| Plaintiffs, | **PATENT CASE** |
| v. | **JURY TRIAL DEMANDED** |
| NETLFIX, INC., | **CONTAINS HIGHLY CONFIDENTIAL OUTSIDE COUNSEL EYES ONLY INFORMATION** |
| Defendant. | ███████████████ |

## DEFENDANT NETFLIX, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

i

TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ............................................................................................................2

        A.      Procedural History .............................................................................................2

        B.      Relevant Facts ....................................................................................................3

        C.      Venue Discovery in *Personalized Media Communications v. Netflix* ...................5

III.    LEGAL STANDARD .....................................................................................................6

        A.      Motion to Dismiss for Improper Venue .............................................................6

        B.      Motion to Transfer for Inconvenient Venue ......................................................7

IV.     ARGUMENT ..................................................................................................................8

        A.      Venue is improper under binding precedent. .....................................................8

        B.      In the alternative, this case should be transferred to the Northern District
                of California. ....................................................................................................14

                1.      This case could have been brought in the Northern District of
                        California. .............................................................................................14

                2.      The cost of attendance for willing witnesses heavily favors
                        transfer. .................................................................................................14

                3.      The availability of compulsory process to secure the attendance of
                        witnesses heavily favors transfer. ........................................................17

                4.      The relative ease of access to sources of proof heavily favors
                        transfer. .................................................................................................20

                5.      Practical considerations, including judicial economy, favor
                        transfer. .................................................................................................22

                6.      The Northern District of California has a far greater interest in this
                        dispute. ..................................................................................................23

                7.      The remaining factors are neutral. ........................................................24

V.      CONCLUSION .............................................................................................................26

██████████████

# TABLE OF AUTHORITIES

**Cases**

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) ................................................ 6

*B/E Aerospace, Inc. v. Zodiac Aerospace*, 2018 WL 7140299, at *7 (E.D. Tex. Nov. 30, 2018) ............................................................................................................................ 22

*Broadcom v. Netflix*, Case No. 8:20-cv-00529 (C.D. Cal. Mar. 13, 2020) ............................... 1, 15

*Deep Green Wireless LLC v. Ooma, Inc.*, 2017 WL 679643, at *1 (E.D. Tex. Feb. 21, 2017) ...................................................................................................................... passim

*Deep Green*, 2012 WL 3242205, at *4 ................................................................................... 15

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 2017 WL 1109865, at *3 (E.D. Tex. Mar. 24, 2017) ........................................................................................................ 25

*Godo Kaisha IP Bridge v. Xilinx, Inc.*, 2017 WL 4076052, at *4 (E.D. Tex. Sept. 14, 2017) ......................................................................................................... 15, 17, 24

*Gunn v. Minton*, 568 U.S. 251, 263 (2013) ............................................................................. 14

*In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) ......................................... 22, 23, 24

*In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020) ........................................................ 20

*In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020) .................................................... passim

*In re Apple, Inc.*, 581 F. App'x at 889) ................................................................................... 17

*In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017) ....................................................... 6, 8, 13

*In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) ............................................... 14, 20

*In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020) ........................................................... passim

*In re HP Inc.*, 2018 WL 4692486, at *2 (Fed. Cir. Sept. 25, 2018) ....................................... 14, 15

*In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) .............................................. 14

*In re TracFone Wireless, Inc.*, 2021 WL 865353, at *2 (Fed. Cir. Mar. 8, 2021) .......................... 8

*In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ..................................................... 23, 24

*In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008) ............................................................ 7, 8

*In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018) .................................................... 6

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) .................................................. 14

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008)................................................................................................................................. 22

*Kranos IP Corp. v. Riddell, Inc.*, 2017 WL 370462, at *2 (E.D. Tex. Aug. 28, 2017) ................. 7

*Lifestyle Sols., Inc. v. Abbyson Living LLC*, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017) ...................................................................................................................................... 16, 24

*Lone Star Silicon Innovations LLC v. Micron Tech., Inc.*, 2017 WL 10221621, at *1 (E.D. Tex. Aug. 24, 2017) ............................................................................................ 7, 15, 17, 21

*Nichia Corp. v. Vizio, Inc.*, 2017 WL 10442228, at *5 (E.D. Tex. Nov. 15, 2017) ...................... 7

*Oyster Optics, LLC v. Coriant Am. Inc.*, 2017 WL 4225202, at *4 (E.D. Tex. Sept. 22, 2017) ............................................................................................................................................ 7

*Personalized Media Commc'ns, LLC v. Netflix, Inc.*, Case No. 2:19-cv-00090-JRG (E.D. Tex.) .................................................................................................................................... 5, 6

*Personalized Media Communications, LLC, v. Google LLC*, Case No. 2:19-CV-00090-JRG ..................................................................................................................................... 12, 13

*Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)............................................... 7

*TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ............. 6, 8

*Uniloc 2017 LLC v. Google LLC*, 2020 WL 3064460, at *6 (E.D. Tex. June 8, 2020) ............... 17

*Uniloc USA, Inc. v. Apple Inc.*, 2017 WL 11553227, at *9 (E.D. Tex. Dec. 22, 2017) ............... 22

*Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ......................................................................... 7

*Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1381-82 (Fed. Cir. 2019) .............................. 7

*WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014)........................................................ 25

**Statutes**

28 U.S.C. § 1400(b) .......................................................................................................... 6, 8, 14, 26

28 U.S.C. § 1404(a) .................................................................................................................... 7, 26

*See* 28 U.S.C. §§ 1391(b)-(d)....................................................................................................... 14

iv

Defendant Netflix, Inc. ("Netflix") respectfully moves to dismiss this case for improper venue or, in the alternative, to transfer it to the U.S. District Court for the Northern District of California.

## I.   INTRODUCTION

This action is not the first time Broadcom[1] has sued Netflix for patent infringement.  Last year, Broadcom filed an action for infringement of twelve (12) patents in the U.S. District Court for the Central District of California.  As is the case here, Broadcom accused Netflix's streaming technology, Titus, Netflix's container management platform, and Docker (third-party container software) of infringing Broadcom's patents.  Compl. ¶¶ 40, 60-73, 81, 95.  The court transferred the action to the Northern District of California, finding it was the "center of gravity" of the dispute.  *Broadcom v. Netflix*, Case No. 8:20-cv-00529-JVS, ECF No. 62, at 9 (July 10, 2020).  The action remains pending there.

Unsatisfied with the venue in which it is headquartered, Broadcom sought to take the dispute even further from home and filed this action.  But under controlling Federal Circuit precedent, there is no venue in this District.  Netflix is a Delaware corporation with its principal place of business in Northern California.  Netflix has no established physical presence in Eastern Texas:  Netflix does not have offices and does not own or lease property here.

So, Broadcom alleges venue based on contracts between Netflix and local internet service providers ("ISPs"), who host servers provided by Netflix.  This theory fails under Federal Circuit precedent, which holds that local ISPs with whom a defendant contracts to host the defendant's servers are not "agents" conducting business in the District.  That is precisely the theory

---

[1] The plaintiffs in this case—CA, Inc. ("CA"), and Avago Technologies, International Sales PTE. Limited ("Avago")—are subsidiaries of Broadcom, Inc.  *See* Compl. ¶ 19.  They are collectively referred to as "Broadcom" or "Plaintiffs."

Broadcom relies on here, pleading venue on the basis that "Netflix's ISP partners in this District act as Netflix's agents in conducting Netflix's business in this District." Compl. ¶ 16.  Venue is thus improper in this District as a matter of law.

In contrast, venue is proper in the Northern District of California—indeed, Broadcom already has another patent infringement suit against Netflix pending there.  And if this case is to proceed, the Northern District of California is, as another district court much closer to that venue has already found, the more convenient forum.

As explained in more detail below, this case must be dismissed for improper venue.  But if the case is not dismissed on that basis, Netflix requests that the Court transfer the case to the Northern District of California to avoid the significant burden that would be imposed on Netflix and numerous third parties by proceeding in this District.

## II.     BACKGROUND

### A.     Procedural History

On March 13, 2020, Avago and Broadcom Corp. (another Broadcom Inc. subsidiary based out of San Jose) sued Netflix in the Central District of California on nine patents. Hasselberg Decl. ¶ 2, Ex. 6; Compl., *Broadcom v. Netflix*, Case No. 8:20-cv-00529 (C.D. Cal. Mar. 13, 2020) ("Central District Case"), ECF No. 1.  On June 8, 2020, Netflix moved to dismiss four patents on the basis of 35 U.S.C. § 101 and moved to transfer to the Northern District of California.  *Id.*, ECF Nos. 44-45.  On June 22, 2020, Broadcom filed an amended complaint, adding three additional patents.  *Id.*, ECF No. 52.  On July 10, 2020, Judge James V. Selna granted Netflix's motion to transfer, *id.*, ECF No. 62, and the case was assigned to Judge James Donato.  *See Broadcom v. Netflix*, 3:20-cv-04677 ("Northern District Case"), ECF No. 71.

2

Netflix re-filed its motion to dismiss, *id.* ECF No. 87, and Judge Donato heard that motion on December 22, 2020.  *Id.*, ECF No. 96.  On April 29, 2021, Netflix moved to stay the case pending *inter partes* review of several of the asserted patents.  *Id.*, ECF No. 109.  The motions to dismiss and stay are pending.

On March 9, 2021, Plaintiffs sued Netflix in this District on five new patents.[2]  *See* Compl.  The Court granted two unopposed applications for extension of time for Netflix to respond to the Complaint, Hasselberg Decl. ¶ 11, and on May 17, 2021, Netflix timely filed this Motion.

**B.      Relevant Facts**

All parties in this case are based in the Northern District of California.  Netflix's principal place of business is in Los Gatos, California.  Garnica Decl. ¶ 4.  Plaintiffs CA and Avago are based in San Jose, California, in the same building as their parent company, Broadcom, Inc.  Compl. ¶¶ 1-2; Hasselberg Decl. at Ex. 6, p. 1.

Likewise, the bulk (if not all) of the relevant evidence in this case is in the Northern District of California.  Netflix makes its product development and business management decisions at its Los Gatos, California headquarters, where its management, engineering, and product design and development staff are based.  Garnica Decl. ¶ 5.  Its technical documentation is located in Los Gatos.  *Id.* ¶ 6.  There are 21 Netflix employees with potentially relevant information in the Northern District of California.  *Id.* ¶ 8.  There are also four inventors and 13 potential third-party witnesses in that District, including patent prosecution counsel, prior artists, and former employees—all of whom are outside the subpoena power of this Court.  *Id.* ¶ 11;

---

[2] Netflix filed an action for declaratory judgment of non-infringement on these patents.  *See Netflix, Inc. v. CA, Inc. et al*., No. 3:21-cv-03649-EMC (N.D. Cal. May 14, 2021).



Hasselberg Decl. ¶¶ 18-20.  It is unclear what, if any, evidence is located in the Eastern District of Texas.  Neither Avago nor CA appears to be in good standing to do business in this state.  *Id.* at Exhibits 7-9, ¶ 17.

Netflix neither owns nor leases real estate in this district.  Garnica Decl. ¶ 13.  Netflix employs only eight individuals who reside in this District, all of whom work remotely out of their homes, and none of whom have been identified as having potentially relevant information. *Id.* ¶¶ 14-18.  Netflix does not pay for any portion of their rent and does not require them to live here.  *Id.*

In some portions of the United States, Netflix owns or leases data centers (called "Internet Exchange Points" or IXs), which contain equipment owned by Netflix for the purpose of caching content for delivery.  Garnica Decl. ¶ 33.  None of those data centers are located in this District.  *Id.*

Netflix enters into software license agreements with the ISPs

---

[3] These appliances are often referred to as "Open Connect Appliances" or "OCAs."

██████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████

Moreover, Netflix does not have any signs on any of the ISP's buildings, and Netflix

does not list any ISP building addresses as Netflix locations.  Garnica Decl. ¶ 31.  And █████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

### C.    Venue Discovery in *Personalized Media Communications v. Netflix*

In 2019, Netflix was sued in this District based on the same theory of venue alleged by

Broadcom in this case.  *See Personalized Media Commc'ns, LLC v. Netflix, Inc.*, Case No. 2:19-

cv-00090-JRG (E.D. Tex.) (Dkt. No. 1).  The plaintiff Personalized Media Communications

("PMC") alleged that venue was proper over Netflix due to the presence of OCAs housed by

ISPs located in Eastern Texas.  Netflix moved to dismiss PMC's case for improper venue.  *Id.*

(Dkt. No. 62).

During venue discovery, Netflix produced all the agreements between Netflix and ISPs in

this District, as well as all communications between Netflix and those ISPs concerning the

OCAs.  Netflix also made a witness available for deposition to testify about its relationships with the ISPs that house the OCAs.  Concurrent with the filing of this motion, Netflix offered to produce to Broadcom all of the material it produced during venue discovery in PMC, provided that Broadcom agrees to treat all such material as subject to Patent Local Rule 2-2 until the Court enters a protective order in this case.

While Netflix's motion to dismiss was pending, the Federal Circuit issued *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020), ordering the dismissal of a case against Google in which the plaintiff relied on the same theory of venue that PMC alleged against Netflix.  In the wake of the Federal Circuit's decision, PMC agreed to transfer its case to the Southern District of New York.  *See* Case No. 2:19-cv-00090-JRG (Dkt. No. 194).

## III.   LEGAL STANDARD

### A.   Motion to Dismiss for Improper Venue

28 U.S.C. § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions."  *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017).  Under that provision, venue is proper only in a judicial district where the defendant either (i) "resides," or (ii) "has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *TC Heartland*, 137 S. Ct. at 1520-21.  Congress enacted Section 1400(b) as a "restrictive measure" that "define[s] the exact limits of venue in patent infringement suits."  *In re Cray Inc*., 871 F.3d 1355, 1361 (Fed. Cir. 2017).

Once a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).  When considering a motion for improper venue under Rule 12(b)(3), "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).  Unsupported allegations that

6

merely parrot the language of Section 1400(b) "will not suffice to prevent a motion to dismiss." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1381-82 (Fed. Cir. 2019); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).  Moreover, "well-pleaded facts are accepted as true only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Kranos IP Corp. v. Riddell, Inc.*, 2017 WL 370462, at *2 (E.D. Tex. Aug. 28, 2017) (internal quotations omitted).

### B.    Motion to Transfer for Inconvenient Venue

"Regardless of whether the plaintiff's chosen venue is proper, '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought.'" *Lone Star Silicon Innovations LLC v. Micron Tech., Inc.*, 2017 WL 10221621, at *1 (E.D. Tex. Aug. 24, 2017) (quoting 28 U.S.C. § 1404(a)).  The purpose of Section 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Oyster Optics, LLC v. Coriant Am. Inc.*, 2017 WL 4225202, at *4 (E.D. Tex. Sept. 22, 2017) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)) (internal quotations omitted).  A court "should" therefore "grant a motion to transfer under § 1404(a) if the transferee venue is clearly more convenient than the plaintiff's chosen venue." *Lone Star*, 2017 WL 10221621, at *1 (citing *In re Volkswagen,* 545 F.3d 304, 315 (5th Cir. 2008)).

If a court determines that a case could have been brought in the proposed transferee venue, it must balance a series of non-exclusive public and private factors to determine if that venue is more convenient. *Nichia Corp. v. Vizio, Inc.*, 2017 WL 10442228, at *5 (E.D. Tex. Nov. 15, 2017).  The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive." *Volkswagen*, 545 F.3d at 315.  The public factors are:

"(1) the administrative difficulties flowing from court congestion; (2) the local interest in having

localized interests decided at home; (3) the familiarity of the forum with the law that will govern

the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application

of foreign law."  *Id.*  "The plaintiff's choice of venue is not a factor in this analysis."  *Deep*

*Green Wireless LLC v. Ooma, Inc.*, 2017 WL 679643, at *1 (E.D. Tex. Feb. 21, 2017).  Courts

"must give promptly filed transfer motions 'top priority' before resolving the substantive issues

in the case."  *In re TracFone Wireless, Inc.*, 2021 WL 865353, at *2 (Fed. Cir. Mar. 8, 2021).

## IV.   ARGUMENT

### A.   Venue is improper under binding precedent.

As Broadcom admits in its complaint, "Defendant Netflix, Inc. is a Delaware corporation

that maintains its principal place of business at 100 Winchester Circle, Los Gatos, California

95032." Compl. ¶ 3.  Accordingly, it is undisputed that Netflix is not subject to venue here

under the first prong of 28 U.S.C. § 1400(b).  *See TC Heartland*, 137 S. Ct. at 1520-21.

Broadcom's venue allegations are instead aimed at the second prong of Section 1400(b), which

requires establishing that Netflix or an agent of Netflix has "a regular and established place of

business" in this district.  But Broadcom cannot establish that here, and its case should therefore

be dismissed.

To establish that a corporation has a regular and established place of business in a district,

"(1) there must be a physical place in the district; (2) it must be a regular and established place of

business; and (3) it must be the place of the defendant."  *In re Cray*, 871 F.3d at 1360.  A

"physical place" in the district means a "a fixed physical location" "from which the business of

the defendant is carried out."  *Id.* at 1362.  A "regular and established place of business" means a

"stable," "permanent," and "not transient" place in which  there is a "regular, physical presence

███████████████████████████████████████████████

of an employee or other agent of the defendant conducting the defendant's business." *In re Google LLC*, 949 F.3d at 1344-45.

Broadcom fails to allege any "physical place" owned or controlled by Netflix in this District.  Netflix neither owns nor leases real estate of any kind here.  Garnica Decl. ¶ 13. Broadcom alleges that "[t]he physical servers located in facilities in this District are regular-and-established places of business of Netflix," Compl. ¶ 17, but █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

And ██████████████████████████those appliances could not establish that Netflix has a "regular and established place of business" here.  *See In Re Google*, 949 F.3d at 1343-45 (holding that the physical presence of Google's servers in this District was insufficient to show that Google had a "regular and established place of business").  Moreover, ████████████

███████████████████████████████████████In short, no ISP's facility is a "physical place" *of Netflix*.

In its venue allegations, Broadcom reproduces a figure from a public Netflix web page that Broadcom alleges "depicts locations of Netflix OCAs throughout the United States, including within this District."  Compl. ¶ 14.  But Broadcom omits the legend immediately below the figure:

🟩 ISP Locations  🟧 Internet Exchange Point (circles are sized by volume)

Source: https://about.netflix.com/en/news/how-netflix-works-with-isps-around-the-globe-to-deliver-a-great-viewing-experience.

The map depicts only green symbols—ISP Locations—in the Eastern District of Texas. By contrast, the map does not show any orange symbols here.  The orange symbols represent

███████████████████████████

"Internet Exchange Points," ██████████████████████████████████

██████████████████████████   There are no Internet Exchange Points in this District.

*Id.*

Lacking any Netflix facilities or employee presence, Broadcom nonetheless hangs venue on unspecified ISP facilities.  Compl. ¶ 13.  Recycling the theory rejected by the Federal Circuit, Broadcom argues that the ISPs "act as Netflix's agents in conducting Netflix's business in this District."  Compl. ¶ 16.

In *In re Google*, the Federal Circuit rejected venue based on the theory that ISPs hosting servers in this district were a regular and established place of business of Google.  The plaintiff's "allegation of venue was based on the presence of several Google Global Cache ('GGC') servers, which function as local caches for Google's data."  949 F.3d at 1340.  The Federal Circuit concluded that the ISPs were not Google's "agents," and that venue over Google in this district was improper.

"An agency relationship," the Federal Circuit stated, "is a 'fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to the act."  *Id.* at 1345 (citing Restatement (Third) of Agency § 1.01).  Based on the provisions of the contracts between Google and the ISPs, the Federal Circuit concluded that the ISPs were not acting as Google's agents.

The existence of contracts with the ISPs regulating the use of the GCC servers did not itself give rise to an agency relationship.  *See id.* at 1345-46.  That was so even though the contracts "tightly restrict[ed] the ISPs' ability to relocate the servers," "strictly limit[ed] any unauthorized access to the space used by Google's servers," and "forbid the ISPs to access, use,

10

or dispose of" the GGC servers without Google's permission." *Id.* at 1340-41 (internal quotations omitted).

The fact that the ISPs provided the GGC servers with "a connection to the ISP's customers, as well as the public Internet" also did not give rise to an agency relationship. *Id.* at 1345. Nor did provisions in the contracts requiring the ISPs to install the GGC servers. *Id.* at 1346. Moreover, the contractual requirement that the ISPs maintain the GGC servers failed to give rise to an agency relationship. "[M]aintenance activities cannot, standing alone, be considered the conduct of Google's business"—which is "providing video and advertising services to residents of the Eastern District of Texas through the Internet." *Id.* at 1340, 1346. Instead, "[m]aintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers." *Id.* at 1346.

Here, Broadcom's venue allegations mirror the venue allegations that the Federal Circuit found lacking in *In Re Google*. Like the plaintiff in *Google*, Broadcom has not identified any instances in which a Netflix employee has been regularly and physically present at the ISP facilities (and Netflix is aware of no such instances). Instead, Broadcom alleges the same facts that the Federal Circuit found insufficient regarding Google's relationship with the ISPs. Just as in *Google*, Broadcom alleges that: (1) Netflix contracts with ISPs to connect servers to residents of the District, Compl. ¶ 13; (2) Netflix confirms that the ISP meets certain network requirements, *id.* ¶ 15; (3) Netflix performs maintenance activities, *id.* ¶ 15; and (4) the ISPs connect servers to the Internet to deliver cached content to residents in this District, *id.* ¶¶ 16-17. As detailed above, the Federal Circuit has already determined that all of these allegations—even if accepted as true—do not establish that an ISP is an "agent" that provides a basis for venue over the ISP's partner. *See In Re Google,* 949 F.3d at 1345-46.

██████████████████████████████████████████

To the extent there are any differences between the relevant venue facts in *Google* and the venue allegations here, the allegations are baseless and unsupported by the documents Broadcom cites.  For example, Broadcom alleges that Netflix installs the OCAs, Compl. ¶ 13, but nothing Broadcom cites in its Complaint supports such an allegation. ████████████████

████████████████████████████████████████

██████████████████████

If anything, the contracts between Netflix and the ISPs here give Netflix *less* control than Google had. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ If the *In Re Google* ISPs—who could not even *access* the GGC servers without Google's permission—were not agents of Google, then the ISPs at issue here are certainly not agents of Netflix.

Moreover, the venue allegations at issue here are significantly different than the facts that this Court relied on to find the existence of an agency relationship in *Personalized Media Communications, LLC, v. Google LLC*, Case No. 2:19-CV-00090-JRG (Dkt. No. 257) (July 16, 2020).[4]  In *PMC*, the Court chose not to address "Google's . . . GGC Servers as they relate to venue."  *Id.* at 3.  Instead, venue was grounded in Google's agreements with Communications

---

[4] Netflix does not concede that the Court's holding was correct.  As the Federal Circuit noted when reviewing the decision under the high standard applicable to a petition for a writ of mandamus, "Google raises viable arguments based on the law of agency and this court's precedent." *In re Google LLC*, 823 F. App'x. 982, 983 (Fed. Cir. 2020).

████████████████████████████

Test Design, Inc. ("CTDI") to warehouse, refurbish, repair, and ship Google hardware products—including Google's cellphones—from CTDI's facility located in Flower Mound, Texas.  An agreement with CTDI granted Google "a specific and defined space within the Flower Mound Facility called the 'Google Secured Area' where all repair, refurbishment, and warehousing activities are to be conducted." *Id.* at 4.  Google also defined the physical properties of the Google Secured Area, which had to "be fully separate from other operations." *Id.*  In addition, "the location of the Google Secured Area [could not] be moved outside of the Flower Mound Facility without the express written consent of Google." *Id.*

In concluding that CTDI was Google's agent, the Court also emphasized that Google "authorize[d] CTDI to act on its behalf. Google tells its customers to send their devices to 'us'— *i.e.*, Google—at the Flower Mound Facility." *Id.* at 8.  And Google required CTDI to return repaired devices to Google's customers "in Google branded packaging." *Id.* at 9.

None of this resembles Netflix's contractual relationships with ISPs in this District.

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████ Indeed, there are no Netflix signs on any of the ISP's buildings. *Id.* ¶ 31.

In short, the facts relevant to venue here are essentially the same as the facts at issue in the Federal Circuit's decision in *In Re Google* (where venue was not proper), and significantly different than the facts at issue in this Court's decision in *Personalized Media Communications*.

Under controlling Federal Circuit precedent, Broadcom cannot carry its burden to establish that venue is proper here.  This case should therefore be dismissed.

**B.      In the alternative, this case should be transferred to the Northern District of California.**

There is a "stark contrast in relevance, convenience, and fairness" between the Northern District of California and this District.  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  Several factors heavily favor transfer to the Northern District of California, and not one weighs against it.  Under such circumstances, transfer is required.  *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) ("With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is 'clearly more convenient.'"); *accord In re HP Inc.*, 2018 WL 4692486, at *2 (Fed. Cir. Sept. 25, 2018) (mandating transfer when "nothing favors the transferor forum, whereas several factors favor the transferee forum").

### 1.      This case could have been brought in the Northern District of California.

As a threshold matter, this case could have been brought in the Northern District of California.  Federal courts have subject matter jurisdiction over federal statutory claims, including claims for patent infringement.  *Gunn v. Minton*, 568 U.S. 251, 263 (2013); 28 U.S.C. § 1400(b).  Moreover, Netflix is subject to personal jurisdiction in the Northern District of California, where it maintains its principal place of business.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).  Finally, as explained in Section IV.A., *supra*, and because Plaintiffs allege that acts of infringement occurred there, venue would be proper in that district as well.  *See* 28 U.S.C. §§ 1391(b)-(d), 1400(b); *see also* Compl. ¶ 6.

### 2.      The cost of attendance for willing witnesses heavily favors transfer.

"The convenience of the witnesses is probably the single most important factor in a transfer analysis."  *Deep Green*, 2017 WL 679643, at *4 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).  In assessing this factor, the Fifth Circuit considers the "100-mile rule," which provides that witness inconvenience increases in direct relationship to the

14

additional distance to be traveled.  *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020).

Additional distance requires "additional travel time with overnight stays, an increased probability

of meal and lodging expenses, and time away from [a witness's] regular employment."  *Deep*

*Green*, 2012 WL 3242205, at *4.  But the presence of witnesses outside the transferor and

transferee forums does not alter the analysis, *In re HP*, 2018 WL 4692486, at *3, especially

when such witnesses would be required to travel a significant distance regardless of the chosen

venue,  *Lone Star*, 2017 WL 10221621, at *3.  Given the early stage of a case at which a motion

to transfer is filed, a court "should consider all potential material and relevant witnesses,

regardless of the likelihood of their being called to testify at trial."  *Godo Kaisha IP Bridge v.*

*Xilinx, Inc.*, 2017 WL 4076052, at *4 (E.D. Tex. Sept. 14, 2017); *Lone Star*, 2017 WL

10221621, at *3 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)) ("Requiring

a defendant to show that a potential witness has more than relevant and material information at

this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

Here, the location of witnesses overwhelmingly favors transfer.  Based on Plaintiffs'

Complaint, Netflix has identified 21 employees with potentially relevant information:



Garnica Decl. ¶ 8.  These individuals, who are all on Netflix's product and engineering teams, authored articles about the accused technology on which Plaintiffs rely in the Complaint and may therefore serve as witnesses on the design, development, and implementation of the accused technology.  *See* Compl., *passim*.  Additionally, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉  *Id.* ¶ 10.  Every single one of these employees is based out of Los Gatos. *Id.* ¶ 8.  Because Los Gatos is roughly 1,842 miles from Marshall, Texas, Hasselberg Decl. ¶ 12, travel for these employees will likely involve air travel, at least one night at a hotel, multiple days of missed work, and significant expense.  Garnica Decl. ¶ 19.  The inconvenience of this forum favors transfer.  *See, e.g.*, *Lifestyle Sols., Inc. v. Abbyson Living LLC*, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017).

Likewise, of the twelve inventors of the asserted patents, on information and belief, the following four reside in the Northern District of California:



Hasselberg Decl. ¶ 18.  Crucially, these four inventors provide coverage for all five of the asserted patents.  *Id.*  These inventors will provide factual testimony on, among other things, issues related to priority dates, the meaning of certain terms, purported improvements over the

16

prior art, and the existence of commercial embodiments, if any.  That evidence will bear upon legal issues including claim interpretation, validity, and damages.  For these reasons, some or all of them may be required to testify at trial.  Their presence in the Northern District of California also favors transfer.

Finally, as described in Section IV.B.3., *infra*, Netflix has also identified 13 potential third-party witnesses who reside in the Northern District of California.  The location of these individuals "weighs heavily for transfer."  *Godo Kaisha*, 2017 WL 4076052, at *4 (citing *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)).

The large number of important party- and non-party witnesses in the Northern District of California, and the significant burden of requiring those witnesses to travel to this District, warrant transfer.  *See Uniloc 2017 LLC v. Google LLC*, 2020 WL 3064460, at *6 (E.D. Tex. June 8, 2020) (transferring a case when the defendant established "that far more witnesses in this case, both party and non-party, are in the Northern District [of California] or close to it.").

### 3.     The availability of compulsory process to secure the attendance of witnesses heavily favors transfer.

Under Federal Rule of Civil Procedure 45, a district court may compel attendance by a witness "at any place within the district of the court from which it issued or at any place within 100 miles of where the deposition, trial, or hearing is held."  *Lone Star*, 2017 WL 10221621, at *2 (citing Fed. R. Civ. P. 45(b)(2)(C)).  The availability of compulsory process "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."  *Godo Kaisha IP Bridge 1*, 2017 WL 750290, at *4  (E.D. Tex. Feb. 27, 2017) (quoting *In re Apple, Inc.*, 581 F. App'x at 889).

Here, Netflix has identified 13 potential third-party witnesses who reside in the Northern District of California, outside the subpoena power of this Court.

17

**First**, the following attorneys who prosecuted the asserted patents, on information and belief, reside in the Northern District of California:



Hasselberg Decl. ¶ 19.  These individuals may provide testimony on the prosecution history of the asserted patents.  None of the patent prosecutors for the asserted patents appear to live or work within 100 miles of Marshall.  *Id.*

**Second**, Netflix has identified the following prior-art inventors who reside in the Northern District of California:



Hasselberg Decl. ¶ 20.  But these prior-art witnesses are outside the subpoena power of this Court.

18

███████████████████████████

*Third*, based on the allegations of the Complaint, Netflix has identified the following former employees who might have relevant information:

- David Ronca

- ¶ ████████████

- ▮ ████████████

Garnica Decl. ¶ 11.  These individuals authored articles cited by Plaintiffs to support their infringement allegations.  *See* Compl. at n. 34, 44, 49, 50.  But they, too, reside in the Northern District of California, which would be the more convenient forum for them to attend trial or other proceedings.  In fact, when Broadcom sued Netflix in an inconvenient forum last year, David Ronca submitted a declaration in support of Netflix's motion to transfer from the Central District of California to the Northern District of California.  Hasselberg Decl. at Ex. 1.  He explained that travel to the relatively closer venue would require him to miss additional days of work as compared to the Northern District of California and would interfere with his ability to care for his elderly mother-in-law, for whom he is a full-time caregiver.  *Id.*  On information and belief, these concerns apply with even greater force in this case.

*Fourth,* to the extent Netflix is required to compel testimony from employees of Docker, Inc. ("Docker"), which, as explained in Section B.4., *infra*, has information relevant to at least one of the accused products, those witnesses would also likely be outside the subpoena power of this Court.  Docker is headquartered in the Northern District of California.  *See* Hasselberg Decl. ¶ 21.

The presence of at least 13 potential third-party witnesses in the Northern District of California heavily favors transfer, especially when there does not appear to be a single witness—in Northern California or elsewhere—who is within the subpoena power of this Court.  *See*

*Lifestyle*, 2017 WL 5257006, at *4 (considering the "absolute subpoena power" of the transferee district); *Lone Star*, 2017 WL 10221621, at *2 ("Because there are a substantial number of witnesses within the subpoena power of the Northern District of California and few, if any, identified third-party witnesses who can be compelled to appear in the Eastern District of Texas, this factor weighs in favor of transfer."); *In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020), *cert. denied*, 2021 WL 1240949 (Apr. 5, 2021) ("Clearly, when fairly weighed, here, the compulsory process and sources of proof factors together tip significantly in favor of transferring the case.") (internal quotations and alterations omitted).

### 4.     The relative ease of access to sources of proof heavily favors transfer.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Deep Green*, 2017 WL 679643, at *2 (citing *In re Genentech, Inc.*, 566 F.3d at 1345) (quotations omitted).  This factor must be weighed, "regardless of whether the documents are in electronic form and can be easily transported."  *Id.*[5]  Moreover, this factor is not rendered neutral "merely because some sources of proof can be identified in the [transferor] district."  *In re Apple*, 979 F.3d at 1340.

Netflix maintains *all* of the documentary evidence that might be relevant to the accused products in the Northern District of California.  Garnica Decl. ¶ 6-7.  Because its product and engineering teams are based in Los Gatos, that is where Netflix maintains its research, design, and development documents, including source code.  *Id.* ¶ 6.  Additionally, to the extent it becomes relevant, Netflix also maintains its financial information in the Los Gatos office.  *Id.* ¶

---

[5] While Netflix acknowledges that electronic evidence may be easily transported, as explained herein, the employees who would facilitate access to such documents are in the Northern District of California.

7.  Conversely, Netflix does not maintain *any* documentation in this District.  *Id.* ¶ 6.  The location of Netflix's evidence, which will serve as the bulk of the evidence at trial, therefore favors transfer.  *See Lone Star*, 2017 WL 10221621, at *2 (concluding this factor favored transfer where the defendant's "documents and evidence are likely more voluminous" than the plaintiff's and were "located closer to the Northern District of California").

There is also at least one third-party company with potentially relevant evidence that is headquartered in the Northern District of California.  Docker is the company that provides the open source code for the software "containers" on which Netflix's streaming service relies.  *See* Compl. ¶¶ 65, 70.  Docker's principal place of business is in Palo Alto, California.  *See* Hasselberg Decl. ¶ 21.  This also favors transfer.  *See Lifestyle*, 2017 WL 5257006, at *3 (finding the location of third-party documentation favored transfer).

Finally, Plaintiffs' substantial presence in the Northern District of California far outweighs their presence (if any) in this District.  Avago and CA are both subsidiaries of Broadcom, Inc.  *See* Hasselberg Decl. at Ex. 6, p. 158.  Broadcom is headquartered in San Jose—which is in the Northern District of California.  *Id.* at 33.  CA and Avago's U.S. headquarters are at the same address.  *Compare id. with* Compl. ¶¶ 1-2.  And Plaintiffs' ties to this District are unclear.  Avago is not currently licensed to conduct business in the State of Texas.  Hasselberg Decl. at Ex. 7.  And Netflix could not locate "CA, Inc." as a business registered with the Texas Office of the Comptroller.  ¶ 17.[6]  Finally, Plaintiffs do not allege that CA's alleged office in Plano, Texas bears any relation to this lawsuit.  Thus, to the extent Plaintiffs have documentary evidence relevant to this suit, it is likely that such evidence will be located at the joint company

---

[6] To the extent Plaintiffs are conflating CA, Inc. with "CA Technologies, Ltd." or "CA Technologies LLC," it appears that neither entity is in good standing with the State of Texas.  *Id.* at Exs. 8-9.

headquarters, in the Northern District of California.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (presuming the bulk of the discovery material relating to a corporate party is located at the corporate headquarters).[7]  This further tips the scales in favor of transfer.  *See B/E Aerospace, Inc. v. Zodiac Aerospace*, 2018 WL 7140299, at *7 (E.D. Tex. Nov. 30, 2018) (finding this factor weighed in favor of transfer to the Central District of California when the plaintiff's own relevant facility was located on the West Coast).

The relative ease of access of proof from Netflix, third parties, and even Plaintiffs in the Northern District of California significantly favors transfer.

### 5. Practical considerations, including judicial economy, favor transfer.

"Practical problems include those that are rationally based on judicial economy. Particularly the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of transfer."  *Uniloc USA, Inc. v. Apple Inc.*, 2017 WL 11553227, at *9 (E.D. Tex. Dec. 22, 2017); *see also J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008) ("[T]ransfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar defendants with the same or similar products.").

There is another case pending in the Northern District of California involving overlapping plaintiffs, the same defendant, and the same accused products.  In March 2020,

---

[7] Indeed, various Broadcom entities have moved to transfer *to* the Northern District of California in at least six patent cases.  *See Tessera, Inc. v. Broadcom Corp.*, 2017 WL 1065865, at *1 (D. Del. Mar. 21, 2017); *Godo Kaisha IP Bridge 1*, 2017 WL 750290, at *1; *Azure Networks, LLC v. CSR PLC*, 2012 WL 12843207, at *1 (E.D. Tex. Sept. 27, 2012); *Agere Sys., Inc. v. Broadcom Corp.*, 2003 WL 21700458, at *1 (E.D. Pa. July 23, 2003); *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 694 (D. Del. 2001); *Regents of the Univ. of Minnesota v. LSI Corp.*, 2018 WL 6497034, at *1 (D. Minn. Feb. 1, 2018).  In *Godo Kaisha IP Bridge 1*, the Broadcom entities were represented by the same counsel as Plaintiffs in this case.

Avago and Broadcom Corp., another sister company, sued Netflix in the Central District of California on nine patents.  *See* Case No. 8:20-cv-00529.  In that case, the plaintiffs accused, *inter alia*, Netflix's content delivery network and Titus Container Management Platform—the same technology accused by four out of five patents in this case.  *Compare id.* at ECF 52 *with* Compl. ¶¶ 40, 60, 81, 95.  After Netflix moved to dismiss four patents on the basis of 35 U.S.C. § 101, Broadcom added three new patents to an amended complaint.  Notably, each new patent was assigned from CA to Avago a few days before Broadcom filed the amended complaint. Hasselberg Decl. at Exs. 2-4.  Netflix successfully moved to transfer that case to the Northern District of California, where it is currently pending before Judge Donato.  *See* 3:20-cv-04677.[8] Judge Donato has heard arguments on Netflix's motion to dismiss.  Hasselberg Decl. ¶ 10.  The parties have begun discovery and exchanged terms for claim construction, and their joint claim construction memorandum is due May 18, 2021.  *Id.*  The existence of another case in the Northern District of California that involves the same defendant and accused technology further favors transfer.  *See In re Apple*, 979 F.3d at 1344.

   **6.**  **The Northern District of California has a far greater interest in this dispute.**

   The "local interest in having localized interests decided at home weighs heavily in favor of the district where events at issue in the case occurred." *Deep Green*, 2017 WL 679643, at *7 (quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (internal quotations omitted)). While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, connections between the transferee venue and the events giving rise to a suit favors transfer.  *In re Acer Am. Corp.*, 626 F.3d at 1256.  In a patent infringement suit,

---

[8] Netflix has moved to stay that case while the Patent Trial and Appeals Board considers its petitions for *inter partes* review of some of the asserted patents.  The parties are still briefing that motion.

connections between the transferee venue and the events giving rise the suit include the locations

of the company asserting harm and the company alleged to have caused the harm, *Godo Kaisha*

*IP Bridge 1*, 2017 WL 4076052, at *5, the location of inventors and patent prosecution counsel,

*In re Acer*, 626 F.3d at 1255, and the location where the development of the accused products

took place, *In re HP*, 826 F. App'x at 901.

All of these considerations favor the Northern District of California as the venue with

superior ties to the lawsuit.  All parties are headquartered in that district.  *See* Compl. ¶¶ 1-2;

Garnica Decl. ¶ 4.  Nearly half of the inventors are located in that district, as well as some of

patent prosecutors.  *See* Section. IV.B.2., *supra*.  And the accused products are designed,

developed, and managed in that district.  Garnica Decl. ¶ 6.  In contrast, the only purported tie to

this District is CA's office in Plano—and Plaintiffs do not allege that the Plano office has

anything to do with this lawsuit.  The Northern District of California therefore has a much

greater interest in this case.  Given this, and the minimal (or nonexistent) ties between this suit

and the Eastern District of Texas, the localized interest factor favors transfer.  *See Lifestyle*, 2017

WL 5257006, at *5 (finding this factor favored transfer when the defendants were headquartered

in the transferee district and the accused products were stored and distributed from that district);

*In re Apple Inc.*, 979 F.3d at 1345 (finding "[t]he district court also misapplied the law to the

facts by failing to give weight to the significant connections between [NDCA] and the events

that gave rise to a suit") (internal quotations omitted).

### 7.    The remaining factors are neutral.

Three public factors remain: (1) the administrative difficulties flowing from court

congestion; (2) the familiarity of the forum with the law that will govern the case; and (3) the

avoidance of unnecessary problems of conflict of laws or the application of foreign law.  *See In*

*re Volkswagen AG*, 371 F.3d at 203.  For the reasons outlined below, these factors are neutral.

**First,** the difference in time to trial between the Eastern District of Texas and the Northern District of California is negligible—17.7 months for the former, and 22 months for the latter.  *See* Hasselberg Decl. Ex. 11, pp. 66, 35.  And the time to trial for patent cases in the Northern District of California may be shorter than its average for civil cases.  *See In re Apple Inc.*, 979 F.3d at 1343–44 ("NDCA has historically had a shorter time to trial for patent cases.").[9] In any event, this minor difference should not affect the transfer analysis; especially where, as here, it is unlikely that Plaintiffs practice the asserted patents.  *See Deep Green*, 2017 WL 679643, at *6 (citing *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014)).[10]  But to the extent the Court finds this factor weighs against transfer, it cannot outweigh the other factors that favor transfer.  *See id.*  ("[I]n situations where several relevant factors weigh in favor of [or against] transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors.") (internal quotations omitted).

**Second,** both the Northern District of California and this District are equally "capable of applying patent law to infringement claims."  *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 2017 WL 1109865, at *3 (E.D. Tex. Mar. 24, 2017).  This factor is therefore neutral.  *See, e.g.*, *Deep Green*, 2017 WL 679643, at *8.

**Third,** there are no conflict of law issues implicated by transfer.  Thus, this factor is also neutral.  *Id.*.

---

[9] After a pause due to the COVID-19 public health emergency, the Northern District of California resumed live jury trials in civil cases in March 2021.

[10] In its case against Netflix in the Northern District of California, Broadcom does not contend that it practices any of the twelve asserted patents, and nothing in Plaintiffs' allegations here suggest that they practice any of the five patents asserted in this case.

1668965

████████████████████████████████████

## V.    CONCLUSION

Broadcom has been assiduously avoiding the venue in which the parties are

headquartered.  Its first attempt to do so failed under Section 1404(a).  Its second attempt is

prohibited by Section 1400(b).  For the reasons stated herein, Netflix moves the Court to dismiss

this case for improper venue, or, in the alternative, transfer this case to the Northern District of

California.


Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated:  May 17, 2021

By:    */s/ Sharif E. Jacob*
ROBERT A. VAN NEST
LEO L. LAM
MATTHIAS A. KAMBER
PAVEN MALHOTRA
SHARIF E. JACOB
EDWARD A. BAYLEY
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

Melissa Smith
State Bar No. 24001351
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, Texas 75702
Telephone: (903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendant NETFLIX, INC.*

26

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 17th day of  May, 2021, all counsel of record who are deemed to have consented to electronics service ae being served with a copy of this document through the court's CM/ECF system under Local Rule CV-5(a)(3).

*/s/ Melissa R. Smith*
Melissa R. Smith

27