██████████████

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CA, INC. and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED,<br><br>           Plaintiffs,<br><br>v.<br><br>NETFLIX, INC.,<br><br>           Defendant. | No. 2:21–CV–80–JRG–RSP<br><br>**PATENT CASE**<br><br>**JURY TRIAL DEMANDED** |

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER (ECF 26)

---

████████████████████████
██████████████

████████████

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Exhibit List  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Venue Is Proper in This District  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.  Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B.  Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      1.  Netflix's challenge to venue is limited to two flawed
         arguments.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      2.  The OCA servers are Netflix's places of business. . . . . . . . . . . . . . . . . . 3

         a.  Netflix controls the OCA servers.. . . . . . . . . . . . . . . . . . . . . . . . 4

         b.  Netflix ratifies the OCA servers as its own places of
            business.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      3.  Netflix's ISP partners act as Netflix's agents for
         Netflix's business in this District.. . . . . . . . . . . . . . . . . . . . . . . . 9

The Northern District of California Is Not Clearly More
Convenient Than This District  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   A.  The private-interest factors weight against transfer. . . . . . . . . . . . . . . . . 13

      1.  Relative Ease of Access to Sources of Proof . . . . . . . . . . . . . . . . . . . 13

         a.  Netflix has identified no evidence in the Northern
            District of California that will likely be used at trial.. . . . . . . . . . . 14

         b.  Relevant evidence exists in Texas and this District. . . . . . . . . . . . . 15

      2.  Availability of Compulsory Process  . . . . . . . . . . . . . . . . . . . . . . . 18

         a.  Netflix has identified no third-party witnesses who
            have relevant information or are likely to testify at
            trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

         b.  Relevant third-party witnesses live in or near this
            District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      3.  Cost of Attendance for Willing Witnesses . . . . . . . . . . . . . . . . . . . . 22

         a.  Prior-Art and Patent-Prosecution Witnesses . . . . . . . . . . . . . . . . 22

         b.  Netflix Employees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

         c.  Named Inventors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

         d.  CA Employees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      4.  All Other Practical Problems . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B. The public-interest factors weigh against transfer. . . . . . . . . . . . . . . . . . 27

    1. Administrative Difficulties . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    2. Local Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    3. Familiarity with the Law and Conflict of Laws. . . . . . . . . . . . . . . . 30

C. Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

███████████████

### TABLE OF AUTHORITIES

## CASES

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
  No. 2:17cv513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018) . . . . . . . . . .  14, 22

*Alacritech Inc. v. CenturyLink, Inc.*,
  No. 2:16cv693-JRG-RSP, 2017 WL 4155236 (E.D. Tex. Sept. 19, 2017) . . . . . . . .  19

*Allergan Sales, LLC v. UCB, Inc.*,
  No. 2:15cv1001-JRG-RSP, 2016 WL 8201783 (E.D. Tex. Nov. 2, 2016). . . . . . . . .  19

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*,
  No. 2:17cv418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018) . . . . . . . . . . . . .  9

*Broadcom Corp. v. Netflix, Inc.*,
  No. 3:20cv4677–JD, Related Case Order, ECF No. 125 (N.D. Cal. June 8, 2021) . . . . .  26

*CloudofChange, LLC v. NCR Corp.*,
  No. 6:19cv513, 2020 WL 6439178 (W.D. Tex. Mar. 17, 2020) . . . . . . . . . . . . .  23

*Finalrod IP, LLC v. Endurance Lift Sols., Inc.*,
  No. 2:20cv189-JRG-RSP, 2020 WL 7396504 (E.D. Tex. Dec. 16, 2020). . . . . . . . .  27

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
  867 F. Supp. 2d 859 (E.D. Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . .  22

*Garrett v. Hanson*,
  429 F. Supp. 3d 311 (E.D. Tex. 2019) . . . . . . . . . . . . . . . . . . . .  26, 29

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
  No. 2:16cv134-JRG-RSP, 2017 WL 750290 (E.D. Tex. Feb. 27, 2017) . . . . . . . . . .  13

*Hammers v. Mayea-Chang*,
  No. 2:19cv181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019) . . . . . . . . . . .  13

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017). . . . . . . . . . . . . . . . . . . .  2, 3, 4, 7, 9

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . .  26

*In re Google*,
  949 F.3d 1338 (Fed. Cir. 2020). . . . . . . . . . . . . . . . .  2, 3, 9, 10, 11, 12

*Invitrogen Corp. v. Gen. Elec. Co.*,
  No. 6:08cv113, 2009 WL 331889 (E.D. Tex. Feb. 9, 2009) . . . . . . . . . . . . . . .  14

*Kranos IP Corp. v. Riddell, Inc.*,
  No. 2:17cv443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) . . . . . . . . . . .  19

*Network-1 Sec. Sols., Inc. v. D-Link Corp.*,
  433 F. Supp. 2d 795 (E.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . .  28

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
  No. 2:18cv14-JRG-RSP, 2018 WL 6589873 (E.D. Tex. Dec. 14, 2018) . . . . . . . . . .  21

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
    No. CV 17-1692-JFB-SRF, 2018 WL 4941785 (D. Del. Oct. 12, 2018) . . . . . . . . . .  30

*Realtime Data LLC v. Dropbox, Inc.*,
    No. 6:15cv465-RWS-JDL, 2016 WL 153860 (E.D. Tex. Jan. 12, 2016) . . . . . . . . . .  18

*Realtime Data, LLC v. Rackspace US, Inc.*,
    No. 6:16cv961 RWS-JDL, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) . . . . . . . . . .  19

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
    No. 2:14cv15-JRG, 2014 WL 3835421 (E.D. Tex. Aug. 1, 2014). . . . . . . . . . . . . .  18

*Seven Networks, LLC v. Google LLC*,
    No. 2:17cv441-JRG, 2018 WL 4026760 (E.D. Tex. Aug. 15, 2018) . . . . . . . . . .  13, 22

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    No. 2:20cv3-JRG, 2020 WL 6889173 (E.D. Tex. Nov. 24, 2020). . . . . . . . . . . . .  30

*Uniloc USA, Inc. v. Apple Inc.*,
    No. 2:17cv258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) . . . . . . . . . . .  27

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
    No. 4:18cv474, 2019 WL 3082314 (E.D. Tex. July 15, 2019). . . . . . . . . . . . . . .  3

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
    No. 2:17cv456-JRG, 2018 WL 4620636 (E.D. Tex. May 22, 2018) . . . . . . . . . . . .  14

## STATUTES

28 U.S.C. § 1400(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

## RULES

Fed. R. Civ. P. 45(c)(1)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21, 25

███████████████

### EXHIBIT LIST

| | |
|---|---|
| **Exhibit 1:** | Netflix Open Connect Overview, https://openconnect.netflix.com/Open-Connect-Overview.pdf |
| **Exhibit 2:** | Netflix Open Connect Deployment Guide, https://opeconnect.netflix.com/deploymentguide.pdf |
| **Exhibit 3:** | Netflix Open Connect Frequently Asked Questions, https://openconnect.zendesk.com/hc/en-us/articles/360036169352-Is-any-field-service-required-for-OCAs |
| **Exhibit 4:** | Peering with Open Connect, https://openconnect.netflix.com/en/peering/ |
| **Exhibit 5:** | Netflix Open Connect Appliances, https://openconnect.netflix.com/en_gb/appliances/ |
| **Exhibit 6:** | How Netflix Works With ISPs Around the Globe to Deliver a Great Viewing Experience, https://about.netflix.com/en/news/how-netflix-works-with-isps-around-the-globe-to-deliver-a-great-viewing-experience |
| **Exhibit 7:** | Buckeye Broadband, *How Much Data Does Netflix Use?*, https://www.buckeyebroadband.com/ support/internet/how-much-data-does-streaming-netflix-use |
| **Exhibit 8:** | Open Connect Appliance Software License Agreement |
| **Exhibit 9:** | Rule 30(b)(6) Deposition of ███████████ in *Personalized Media Commc'ns, LLC v. Netflix, Inc.*, No. 2:19cv91-JRG (July 18, 2019) |
| **Exhibit 10:** | Deposition of ████████████ (July 8, 2021) |
| **Exhibit 11:** | Michael Costello and Ellen Livengood, *Netflix and Fill*, Netflix Technology Blog (Aug. 10, 2016), https://netflixtechblog.com/netflix-and-fill-c43a32b490c0 |
| **Exhibit 12:** | Randall Stewart, John-Mark Gurney, Scott Long, *Optimizing TLS for High-Bandwidth Applications in Free BSD*, https://manualzz.com/doc/7970889/work |
| **Exhibit 13:** | Randall Stewart, Scott Long, *Improving High–Bandwidth TLS in the FreeBSD kernel*, https://openconnect.netflix.com/publications/asiabsd_tls_improved.pdf |
| **Exhibit 14:** | *City of New Boston v. Netflix, Inc.*, No. 5:20cv135–RWS, Netflix Motion to Dismiss, ECF No. 19, at 10  (E.D. Tex. filed Oct. 2, 2020) |
| **Exhibit 15:** | Declaration of Maria Mirkovski in Support of Netflix, Inc.'s Opposition to Plaintiff's Motion for Class Certification in *City of New Boston* |
| **Exhibit 16:** | Defendant Netflix's First Supplement Responses and Objections to Plaintiffs' First Set of Interrogatories |
| **Exhibit 17:** | CyrusOne Order Form and Service Description Attachment, NETFLIX-CA-000014459 |

██████████████

| Exhibit 18: | Amazon DynamoDB, http:aws.amazon.com/dynamodb/ |
|---|---|
| Exhibit 19: | Steve Urban, *It's All A/Bout Testing: The Netflix Experimentation Platform*, Netflix Technology Blog (Apr. 29, 2016), NETFLIX-CA-000014114 |
| Exhibit 20: | Te-Yuan (TY) Huang, Buffer sizing and AQM observations at Netflix (May 23, 2019) |
| Exhibit 21: | Emails between █████████ and ████████ (Oct. 23, 2014), NETFLIX-CA-000006480 |
| Exhibit 22: | Employees_in_Texas (Streaming Engineers Only), NETFLIX-CA-000014148 |
| Exhibit 23: | LinkedIn Profile of Sean Shriver |
| Exhibit 24: | LinkedIn Profile of ██████████ |
| Exhibit 25: | LinkedIn Profile of ██████████ |
| Exhibit 26: | LinkedIn Profile of ████████ |
| Exhibit 27: | LinkedIn Profile of ██████████ |
| Exhibit 28: | LinkedIn Profile of ██████████ |
| Exhibit 29: | LinkedIn Profile of ██████████ |
| Exhibit 30: | LinkedIn Profile of ███████████ |
| Exhibit 31: | LinkedIn profile of Robert Hucik |
| Exhibit 32: | Declaration of Arya Behzad |
| Exhibit 33: | Declaration of John Walley |
| Exhibit 34: | Hearing transcript in *Speck v. 3M Co.*, No. C 20-5845-JD (N.D. Cal. June 3, 2021) |
| Exhibit 35: | Declaration of Richard L. Wynne, Jr. (July 13, 2021) |
| Exhibit 36: | Share of adults with a Netflix subscription in the United States as of March 2020, Statista, https://www.statista.com/statistics/707542/netflix-subscription-adults-usa/ |
| Exhibit 37: | Amended and Restated ███████████████████ Addendum, NETFLIX-CA-000014201 |

Netflix wants to move this case to the Northern District of California, where Covid-19 has ground already overburdened judicial dockets to a near standstill. But Netflix has multiple regular-and-established places of business in this District, and it has not shown that the Northern District of California is clearly more convenient. Its motion should be denied.

## VENUE IS PROPER IN THIS DISTRICT

### A.  Background

Netflix's business is delivering streaming video content to subscribers through a global network that it calls Open Connect.[1] As Netflix explains, "[t]his type of network is typically referred to as a 'Content Delivery Network' or 'CDN' because its job is to deliver internet-based content (via HTTP/HTTPS) efficiently by bringing the content that people watch close to where they're watching it."[2] "The building blocks of Open Connect are" a "suite of purpose-built server appliances, called Open Connect Appliances (OCAs)" that "store encoded video/image files and serve these files . . . to client devices (for example: set top boxes, mobile devices, or smart TVs)."[3] Netflix provides OCA servers to qualified Internet Service Providers (ISPs)—which Netflix admits are its "ISP partners"—and works with them to stream content to their mutual customers.[4]

CA, Inc. and Avago Technologies International Sales Pte. Limited (collectively, CA) brought this action because the operation of Netflix's CDN, including its operation in the Eastern District of Texas, infringes CA's patents related to networking techniques for improving the quality and efficiency of content delivery.[5]

---

[1]  **Ex. 1**: Netflix Open Connect Overview, https://openconnect.netflix.com/Open-Connect-Overview.pdf at 1.

[2]  *Id.*

[3]  *Id.* at 2.

[4]  *Id.* at 3; *see also* **Ex. 2**: Netflix Open Connect Deployment Guide, at 13, https://openconnect.netflix.com/deploymentguide.pdf ("If you are an Open Connect ISP partner, Netflix works closely with you to determine the optimal configuration for your particular needs.").

[5]  Netflix wrongly states that Broadcom, Inc. accused third-party Docker of "infringing

**B. Arguments**[6]

Netflix's motion does not dispute that Netflix uses OCA servers located in physical locations in this District to conduct its regular and established business of streaming video content to subscribers. The issues are: (i) whether the OCA servers are located in places *of* Netflix, as opposed to places solely of Netflix's ISP partners; and (ii) whether the ISPs who work with Netflix to operate them are Netflix's agents. As explained below, the OCA servers and the places they are housed are places *of* Netflix, and Netflix's ISP partners are Netflix's agents.

**1.   Netflix's challenge to venue is limited to two flawed arguments.**

The following allegations in CA's Complaint support venue in this District:

- Netflix has committed acts of infringement in this District.

- Netflix conducts business in this District by streaming video content through its Open Connect delivery network to subscribers in this District.

- Netflix uses OCA servers located in physical facilities in the District to stream video content to subscribers in this District.

- Netflix retains control over the OCAs located in this District that stream content to subscribers in this District.

- Netflix partners with ISPs in this District who act as Netflix's agents in conducting Netflix's business of streaming video content to subscribers in this District.

- The OCA servers located in physical facilities in this District are regular and established places of business of Netflix.[7]

Netflix's motion does not challenge CA's allegations that: (i) Netflix has committed acts of infringement in this District; (ii) Netflix conducts a regular-and-established business in this District by streaming video content to subscribers in this District; (iii) the OCA servers that Netflix uses to deliver streaming video content to subscribers in this District are located in physical facilities in

---

Broadcom's patents" in an unrelated case. *See* Mot., at 1. Broadcom has not accused Docker of infringement in that or any other case.

[6]   CA's arguments are based on the standards set forth in *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017) and *In re Google*, 949 F.3d 1338 (Fed. Cir. 2020).

[7]   Complaint ¶¶ 9–18, 29.

this District; and (iv) the OCA servers are places of business. Netflix's challenge to venue is limited to two arguments. ██████████████████████████████████████████

████████████ Second, it contends that the ISPs are not acting as its agents. Netflix is wrong on both counts. As the Federal Circuit reiterated in *Google*, "a 'place of business' is not restricted to real property that the defendant must own or lease." *Google*, 949 F.3d at 1343 (quotation marks and brackets omitted). And the evidence clearly shows that Netflix and the ISPs work closely together as partners to stream Netflix's video content to subscribers in this District.[8]

### 2.  The OCA servers are Netflix's places of business.

Netflix wrongly implies that a court's inquiry into whether a defendant has a physical "place of business" should focus on whether the defendant "owns" the place at issue. There is no such ownership requirement. "Indeed, *Cray* itself recognized that a 'place of business' is not restricted to real property that the defendant must 'own or lease,' and that the statute could be satisfied by any physical place that the defendant could 'possess or control.'" *Google*, 949 F.3d at 1343 (quoting *Cray*, 871 F.3d at 1363 (brackets omitted)). "A defendant who operates a table at a flea market," for example, "may have established a place of business; the table serves as a physical, geographical location from which the business of the defendant is carried out." *Id.* (quotation marks and ellipsis omitted). "Similarly, leased shelf space or rack space can serve as a 'place' under the statute." *Id.* at 1343–44.

Further, "ownership" of a facility is not the only test for whether a business is located in a place "of the defendant." Courts also consider whether the defendant "ratif[ies]" or "exercises . . .

---

[8]   Because Netflix's motion is limited to these two issues, CA's response is properly limited to them as well. *See Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18cv474, 2019 WL 3082314, at *5 (E.D. Tex. July 15, 2019) ("Although it is Plaintiff's burden to prove a regular and established place of business, because Honeywell did not challenge these three factors . . . Plaintiff need not prove each factor.").

attributes of possession or control over the place." *Cray*, 871 F.3d at 1363. A defendant's sufficient possession or control over the place may be shown, for example, by "a defendant's representations that it has a place of business in the district[,]" by a defendant's "list[ing] the alleged place of business on a website[,]" or a defendant's "[m]arketing or advertisements" that "indicate that the defendant itself holds out [the] place for its business." *Id.*; *see also id.* ("[T]he defendant must establish *or* ratify the place of business." (emphasis added)).

Here, Netflix both controls the OCA servers and promotes them as *Netflix* OCAs, each of which is sufficient to make them and their locations places of Netflix under the statute.

**a. Netflix controls the OCA servers.**

.[10] In addition, Netflix constantly monitors, troubleshoots, and augments the performance of its deployed OCAs. Netflix's Open Connect Deployment Guide sets forth how Netflix and its ISP partners work together to install and operate those servers.[11] With

---

9

**Ex. 9**: Rule 30(b)(6) Deposition of Michael Smith in *Personalized Media Commc'ns, LLC v. Netflix, Inc.*, No. 2:19cv91-JRG (July 18, 2019) ( Dep. I), at 62–63 (agreeing that Netflix

*Id.* at 90–91.
*Id.* This raises the question, which Netflix could not answer: *See id.*

[10] **Ex. 8**: Open Connect Appliance Software License Agreement §

[11] **Ex. 2**: Open Connect Deployment Guide, at 2.

respect to monitoring, the Deployment Guide states: "As part of the Open Connect program, *Netflix continuously monitors all deployed Netflix OCAs*, including all aspects of the performance and availability of the appliance."[12] Likewise, Netflix's Open Connect Overview states: "After we deploy OCAs to a site, *we constantly measure and analyze their performance and augment capacity* as requirements evolve."[13] And: "***All of our OCA deployments, whether in IXPs or embedded in ISP networks, are constantly monitored*** by the Open Connect Operations team to ensure reliability and efficiency."[14]

Further, Netflix maintains tight control over how its ISP partners use the OCAs. The Open Connect Deployment Guide sets forth rules that ISPs must follow in installing and operating the OCAs. As Netflix explains, "███████████████████████████████████████████ ████████████"[15] The Open Connect Deployment Guide (Ex. 2) requires, among other things:

- The physical connection ISPs must provide for the OCAs.

    "You must be able to provision 2-4 x 10 Gbps ethernet ports in a Connection LACP LAG (or 1 X 100G for some OCA versions) per OCA. The exact quantity depends on the OCA type." *Id.* at 7.

- The network capacity for the ISP facilities.

    "Each site must have the capacity to handle 1.2 Gbps of inbound traffic daily for a 12-hour period per appliance for fill and updates." *Id.* at 6.

- The temperature at which ISPs must keep their facilities.

    "Consistent room temperatures" of "[n]o higher than 78°F (26°C)" and "[m]aximum room temperatures" of "[n]o higher than 104°F (40°C) for very short periods of time only." *Id.* at 7.

- The direction that OCAs, once installed, must face.

    "For global OCAs, optics face the cold aisle," and "[f]or flash-based appliances, optics face the hot aisle." *Id.* at 11.

---

[12] *Id.* at 33 (emphasis added).

[13] **Ex. 1**: Open Connect Overview, at 3 (emphasis added).

[14] *Id.* at 5 (emphasis added); *see also* **Ex. 9**: ████ Dep. I, at 46–50, 105–06 (describing ████████████████████████████).

[15] **Ex. 9**: ████ Dep. I, at 75.

- The manner of inbound and outbound filtering ISPs are permitted to use for the OCAs.

  "Traffic from OCA" must "[a]llow all destination addresses and ports"; "[t]raffic to OCA" must "[a]llow TCP 22, 53, 80, 179, 443, UDP 53 and 123 (source and destination), ICMP types 0, 3, 8, 11, and all ICMPv6 from any public IP/port" and "[a]llow all return traffic from any appliance initiated connection (TCP established)." *Id.* at 14.

- How the OCAs are configured.

  "Each OCA must be assigned one publicly routable IPV4 address, and it is highly recommended to also assign one IPV6 address." *Id.*

  "The router interfaces must be configured for Link Aggregation Group (LAG) with LACP. Each server must be configured in its own LAG bundle for the active interfaces on each server." *Id.*

  "A standard maximum transmission unit (MTU) must be configured on each router interface." *Id.*

  "As an implicit requirement, **all** appliances must have a BGP session configured in order to correctly participate in Netflix content steering and delivery." *Id.* at 16 (emphasis in original).

- The circumstances under which the OCAs, once installed, may be relocated by the ISPs.

  "If you need to make changes to the OCAs in an established site—for example, if you intend to relocate an OCA from one site to another or disable one or more OCAs for a significant period of time—it is important to notify the Open Connect team so that they can make the necessary changes to the cluster configuration." *Id.* at 18.

- Whether ISPs may keep components of the OCAs they purportedly own.

  "[W]e might ask partners to replace PSU or SFP+ optics on an appliance. In such cases we will ship the replacement part to the partner, and we might also request that they return the defective part." *Id.* at 36.

  "Please note that the title to your appliance will transfer to Netflix upon Netflix's receipt of the Appliance in its designated US repair facility." *Id.*

  Netflix's corporate representative also confirmed that Netflix ███████████████████
  ██████.[16] Netflix unquestionably controls the OCA servers that are housed in its ISP

partners' facilities. The OCA servers and the places they are housed are Netflix places of business.

---

[16]   **Ex. 10**: Deposition of ████████ (July 8, 2021) (████ Dep. II), at 101:13–16.

### b. Netflix ratifies the OCA servers as its own places of business.

A defendant must "establish *or* ratify the place of business" for it to be a place "of the defendant." *Cray*, 871 F.3d at 1363 (emphasis added). To determine whether a defendant has ratified a place as its place of business, a court may consider the "defendant's representations that it has a place of business in the district[,]" its "list[ing] the alleged place of business on a website[,]" or "[m]arketing or advertisements" that "indicate that the defendant itself holds out [the] place for its business." *Id.*

As shown in the statements below, Netflix holds out the OCA servers as its own places of business by consistently referring to them in marketing materials and other public statements as "Netflix OCAs" and "our OCAs":

- "We then group *our OCAs* one step further into fill clusters."[17]
- "*[W]e have thousands of appliances* embedded within many ISP networks around the world."[18]
- "We tailor deployment and hardware architectures for each ISP that we work with. *Our Open Connect Appliances* are based on commodity PC components, assembled in custom cases by our suppliers."[19]
- "The first results from our TLS enabled machines can be seen in Fig 7 this shows a plot of throughput of one of *our OCAs*."[20]
- "[W]e demonstrated the cost of TLS encryption on high-bandwidth video serving on *Netflix's OpenConnect Appliance*."[21]

---

[17] **Ex. 11**: Michael Costello and Ellen Livengood, *Netflix and Fill*, Netflix Technology Blog (Aug. 10, 2016), https://netflixtechblog.com/netflix-and-fill-c43a32b490c0, at 2 (emphasis added).

[18] *Id.* at 4 (emphasis added).

[19] **Ex. 5**: Netflix Open Connect Appliances, https://openconnect.netflix.com/ en_gb/appliances/ (emphasis added).

[20] **Ex. 12**: Randall Stewart, John-Mark Gurney, Scott Long, *Optimizing TLS for High-Bandwidth Applications in Free BSD*, https://manualzz.com/doc/7970889/work (emphasis added).

[21] **Ex. 13**: Randall Stewart, Scott Long, *Improving High–Bandwidth TLS in the FreeBSD kernel*, https://openconnect.netflix.com/publications/asiabsd_tls_improved.pdf (emphasis added).

- "*We steer clients to our OCAs* based on an ISP's BGP advertisements, coupled with the routing and steering algorithms in the Open Connect control plane."[22]

- "As part of the Open Connect program, Netflix continuously monitors all deployed *Netflix OCAs*, including all aspects of the performance and availability of the appliance."[23]

- "Now that Netflix operates in 190 countries and we have thousands of appliances embedded within many ISP networks around the world, we are even more obsessed with making sure that *our OCAs* get the latest content as quickly as possible while continuing to minimize bandwidth cost to our ISP partners."[24]

Further, Netflix represents to customers that Netflix's distributed-server network, composed of Netflix OCAs housed within local ISPs, is a critical part of its business.[25] Indeed, Netflix specifically touts its OCAs in the Eastern District of Texas by displaying on its public-facing website a map highlighting ISPs in the Eastern District of Texas, explaining that "[t]his map of our network gives you a sense for how much this effort has scaled in the last five years."[26]

If there were any doubt—and there should be none—that Netflix thinks of the ISP-deployed OCA servers as its own and publicly ratifies the servers as such, Netflix's own filings in this District acknowledge that they are "Netflix Servers." Indeed, in *City of New Boston v. Netflix, Inc.*, where Netflix is attempting to avoid paying franchise fees to local municipalities, Netflix explained: "Netflix's consumers, using their own personal devices, connect to the Internet through their ISP and send requests to Netflix for particular pieces of content. *The subscriber's ISP then relays that request to a **Netflix Server***, and Netflix delivers that content to the subscriber's ISP,

---

[22] **Ex. 2**: Open Connect Deployment Guide, at 15 (emphasis added).

[23] *Id.* at 33 (emphasis added).

[24] **Ex. 11**: *Netflix and Fill*, at 6 (emphasis added).

[25] **Ex. 6**: How Netflix Works With ISPs Around the Globe to Deliver a Great Viewing Experience, https://about.netflix.com/en/news/how-netflix-works-with-isps-around-the-globe-to-deliver-a-great-viewing-experience ("We now have Open Connect Appliances in close to 1,000 separate locations around the world.").

[26] *Id.*

which is responsible for delivering it to its customer's device."[27]

███████████████████████████████████████████████████

██████████████████████████ through these statements Netflix ratifies the deployed OCA locations as its own places of business, making them "places of the defendant" under the venue statute. *See Cray*, 871 F.3d at 1363; *Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17cv418-JRG, 2018 WL 4849345, at *8 (E.D. Tex. Sept. 6, 2018) (holding defendant "adopted and ratified the dealerships within the District as its places of business" where it displayed them on its website as places its business was conducted).

### 3.  Netflix's ISP partners act as Netflix's agents for Netflix's business in this District.

In *Google*, the Federal Circuit found that Google servers in this District satisfied *Cray's* place-of-business requirement because they were "physically located in the district in a fixed, geographic location." 949 F.3d at 1343–44. Nonetheless, it held that "Google lacked a 'regular and established place of business' within the district since it has no employee or agent regularly conducting its business at its alleged 'place of business' within the district." *Id.* at 1347. Netflix relies on that holding to argue that Netflix's self-described ISP partners in this District are not its agents. *Google* does not support that argument.

*Google* did not hold that ISPs may never be agents for venue purposes under 28 U.S.C. § 1400(b). Rather, it held that, under the facts of that case, ISPs that simply installed and performed routine maintenance on *Google's* servers were not acting as *Google's* agents in the conduct of *Google's* business. The Federal Circuit examined the relevant contracts to assess three categories of activities that the ISPs agreed to perform for Google, and found each insufficient. The

---

[27]  **Ex. 14**: *City of New Boston v. Netflix, Inc.*, No. 5:20cv135–RWS, Netflix Motion to Dismiss, ECF No. 19, at 10  (E.D. Tex. filed Oct. 2, 2020) (emphasis added) (citations omitted). In connection with that motion, Netflix did not differentiate between Netflix-owned and ISP-deployed OCA servers.

– 9 –

relationship between Netflix and its ISP partners is far different than in *Google*.

*First*, the ISPs in *Google* provided "the GGC servers with network access, i.e., a connection to the ISP's customers, as well as the public Internet." *Google*, 949 F.3d at 1345. The court found those actions insufficient for agency because "Google has no right of interim control over the ISP's provision of network access beyond requiring that the ISP maintain network access to the GGC servers and allow the GGC servers to use certain ports for inbound and outbound network traffic." *Id. Second*, the ISPs in *Google* performed "installation of the GGC servers." *Id.* at 1346. Although this "may be suggestive of an agency relationship," the Federal Circuit reasoned that because "it is a one-time event for each server," the installation was not sufficiently "regular" to meet the statutory requirements. *Id. Third*, the ISPs in *Google* performed "maintenance" on the servers, but the Federal Circuit found that "maintenance activities cannot, standing alone, be considered the conduct of Google's business." *Id.* (emphasis added). The Federal Circuit contrasted this limited activity with an agent who is involved in "the actual producing, storing, and furnishing to customers of what the business offers." *Id.*

The facts here are different. As explained, Netflix maintains significant control over both the installation and continued operation of the OCAs. Further, the ISPs do much more than simply install and perform routine maintenance on Netflix's OCA servers. They work closely together as partners with Netflix to conduct Netflix's business of streaming video content to subscribers in this District. Netflix explains that this is necessary because "[a]s Netflix grew to be a significant portion of overall traffic on consumer [ISP] networks, it became important to be able to *work with those ISPs in a direct and collaborative way*."[28] The collaborative nature of Netflix's relationship with the ISPs is aptly described in the Open Connect Deployment Guide, which refers to the ISPs

---

[28]   **Ex. 1**: Open Connect Overview, at 1 (emphasis added).

as Netflix's "partners" no less than 48 times and repeatedly states they "work closely" with Netflix.[29] Netflix's corporate representative confirmed ███████████████████████████ ██████████████████████████████████████████████.[30]

And unlike the installation activities in *Google* that the Federal Circuit held were "one-time event[s]" that "do[] not constitute the conduct of a 'regular and established' business," 949 F.3d at 1346, Netflix's ISP partners help Netflix operate the OCAs and control how they deliver content to Netflix's subscribers. The Open Connect Deployment Guide, for example, explains: "the manner in which traffic is directed to the appliance is *determined explicitly by you [the ISP] and Netflix*, not by the appliance itself."[31] Similarly, an "OCA only serves clients at IP addresses that you advertise to the OCA via a BGP session. In other words, traffic is only delivered from your embedded OCAs to the customer prefixes that you explicitly announce to them."[32]

Unlike the relationship between Google and its ISPs that was found insufficient to establish agency, as a condition of participating in Netflix's Open Connect program, Netflix requires ISPs to have numerous personnel available to carry out tasks that Netflix may assign. Indeed, Netflix's peering policy requires ISPs to "provide a 24/7 contact who can escalate critical issues in a timely fashion,"[33] and the Open Connect Deployment Guide requires ISP partners to "identify a person or a set of people who are available to perform" specific roles for Netflix at the ISP to "facilitate the overall process" of delivering streaming video to Netflix customers[34]:

---

[29]  *See, e.g.*, **Ex. 2**: Open Connect Deployment Guide, at 2 ("This article summarizes what partners can expect during the deployment process for embedded OCAs."), 7 ("Your team members will work closely with the corresponding members of the Netflix team to facilitate the overall process.").

[30]  **Ex. 10:** ████ Dep. II, at 168:7–10.

[31]  **Ex. 2**: Open Connect Deployment Guide, at 13 (emphasis added).

[32]  *Id.*

[33]  **Ex. 4**: Peering with Open Connect, https://openconnect.netflix.com/en/peering/, at 1.

[34]  **Ex. 2**: Open Connect Deployment Guide, at 7 (highlighting added).

**TEAM ROLES**

To participate in the OCA program, you will need to identify a person or a set of people who are available to perform the following roles. Your team members will work closely with the corresponding members of the Netflix team to facilitate the overall process.

| Partner Role | Description | Corresponding Netflix role(s) |
| --- | --- | --- |
| Engagement Manager | The main point of contact for the Netflix Open Connect Partner Engagement Manager (PEM) | Netflix Open Connect PEM |
| Legal Representative | Reviews and accepts the legal agreements that are required for OCA deployments | PEM, Open Connect Legal, Open Connect Business Operations |
| Network Engineer | Provides information about partner sites, OCA configurations, maintenance, and network routing | PEM, Open Connect Operations |
| Logistics Representative | Directs the shipment of OCAs  Your logistics representative should be involved at the beginning of the engagement process to avoid shipping delays at later stages of the process | PEM, Open Connect Logistics, Open Connect Operations |
| Data Center Operations | Installs OCAs on the partner network | Open Connect Operations |
| Network Operations | Works with Netflix to troubleshoot routing and other configuration issues that might arise | Open Connect Network Engineering, Open Connect Operations |

If Netflix employees filled these roles at ISP facilities in the Eastern District of Texas, there would be no question that Netflix was operating regular-and-established places of business there. There should be no difference simply because Netflix requires its ISP partners to do these jobs on Netflix's behalf as a condition of participating in Netflix's Open Connect program. Through that program, Netflix avoids having to deploy its own employees to the OCA installations by requiring the ISP to have its personnel perform functions necessary to carry out Netflix's video-streaming business.

██████████████████████████████████████████████

██████████████████████████████████████████████

But in *Google*, the Federal Circuit indicated that "producing, *storing*, and *furnishing to customers of what the business offers*" would support a finding of agency. *Id.* at 1346 (emphasis added). ██████████████████████████████████████, Netflix's deposition confirms that

███████████████████████████████████████████████████████

██████████████████████████████.[35] Netflix's ISP partners fall directly within the

parameters for agency set by *Google*.

Netflix's OCA servers are places of Netflix's business in this District that are operated and

serviced by Netflix's agents. Venue is therefore proper, and Netflix's motion should be denied.

### THE NORTHERN DISTRICT OF CALIFORNIA IS NOT CLEARLY MORE CONVENIENT THAN THIS DISTRICT

There is no dispute that this case could have been brought in the Northern District of

California. The question, therefore, is whether the "public and private factors relating to the

convenience of parties and witnesses as well as the interests of particular venues" demonstrate that

N.D. Cal. is clearly more convenient than this District. *See Godo Kaisha IP Bridge 1 v. Broadcom

Ltd.*, No. 2:16cv134-JRG-RSP, 2017 WL 750290, at *1 (E.D. Tex. Feb. 27, 2017).[36] They do not.

**A. The private-interest factors weight against transfer.**

**1. Relative Ease of Access to Sources of Proof**

"In considering the relative ease of access to proof, a court looks to where documentary

evidence, such as documents and physical evidence, is stored." *Seven Networks, LLC v. Google

LLC*, No. 2:17cv441-JRG, 2018 WL 4026760, at *2 (E.D. Tex. Aug. 15, 2018). A "movant 'is

required to identify specific evidence in the record and to articulate the precise manner in which

that evidence supports his or her claim.'" *Hammers v. Mayea-Chang*, No. 2:19cv181-JRG, 2019

WL 6728446, at *5 (E.D. Tex. Dec. 11, 2019) (citation omitted). Further, "venue analysis is con-

cerned only with the presentation of evidence at and during trial." *Seven Networks*, 2018 WL

---

[35] **Ex. 10**: ████ Dep. II, at 96:9–11 ("Q: █████████████████████████████? A: ████ █████████████████████") (emphasis added).

[36] CA's opposition to Netflix's alternative request to transfer this case under 28 U.S.C. § 1404(a) is based on the legal standards set forth by this Court, for example, in *Godo Kaisha*, 2017 WL 750290.

4026760, at *3 n.4; *see also AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17cv513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("[T]he inquiry regarding access to sources of proof correlates to production and presentation to the jury at trial.").

> ### a. Netflix has identified no evidence in the Northern District of California that will likely be used at trial.

Netflix argues that this factor favors transfer because Netflix maintains evidence that "might be relevant to the accused products" in the Northern District of California. Mot. at 20. But it cites no specific evidence in that district, much less specific evidence that it expects to use at trial. That unidentified documents that "might be relevant" are allegedly maintained in the Northern District of California does not support transfer. *See Invitrogen Corp. v. Gen. Elec. Co.*, No. 6:08cv113, 2009 WL 331889, at *3 (E.D. Tex. Feb. 9, 2009) (finding statement that relevant documents were located at defendant's headquarters, without identifying any specific evidence, "fail[ed] to show that transfer would make access to sources of proof either more or less convenient for the parties").

Netflix also argues that Docker, a third-party company allegedly based in the Northern District of California, has "potentially relevant evidence." Mot. at 21. According to Netflix, Docker "provides the open source code for the software 'containers' on which Netflix's streaming service relies." *Id.* There are several problems with this argument. First, the issue is not whether Docker might have potentially relevant evidence—the issue is whether it has specific evidence that will likely be presented at trial. Netflix fails to identify such evidence. In fact, the only evidence it references is "open source code" that by definition is available to anyone, anywhere. Further, Netflix hasn't shown that Docker maintains its documents in the Northern District of California. It simply assumes that it does so because that's where Docker is based. This assumption should be rejected as "entirely speculative." *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17cv456-JRG, 2018 WL 4620636, at *3 (E.D. Tex. May 22, 2018).

Moreover, when asked during deposition about the relevance of Docker to this particular case, about what relevant information Docker might have, and the names of Docker employees who might be witnesses at trial, Netflix's corporate representative ███████████████

███████████████████████████:

      Q.   ██████████████████████████████████

            MS. HASSELBERG:  ████████████

            MR. JACOB:  ███████████████████████████

            █████████████████████████

      A.   ████████[37]

Netflix falls far short of its burden of proving that the Northern District of California is clearly more convenient when it███████████████████████████████████████████

███████████████████████████████████████████. The Court should disregard Netflix's assertions about Docker.

    **b. Relevant evidence exists in Texas and this District.**

Netflix has ██████████ ████████████████ in this District that store and deliver Netflix content to Netflix subscribers within the District: █████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████[38] Each of these ISPs has information documenting ████████████████████████████████████████████████

██████, which is relevant to determining both the extent and the value of Netflix's infringing activity.[39]

---

[37] **Ex. 10**: ████ Dep. II, at 63:24–64:5 (emphasis added); *see also id.* at 64:7–21.

[38] *See* Declaration of Elena Garnica (Corrected) (Garnica Dec.), ECF No. 43 ¶¶ 20–29, 34–35 & Exs. 3–11; 13–14.

[39] Netflix admits that its ISP partners are responsible for delivering Netflix content from Netflix's servers to its subscribers. *See* **Ex. 14**: Netflix Motion to Dismiss in *City of New Boston*.

In addition to the local Netflix OCAs, Netflix provides OCAs at Internet Exchange Points

(IXPs). ████████████████████████████████████████████████████████████

████████████████████████████.[40] Netflix has at least three IXPs in Texas: Equinix, Inc.

and Midsouth U.S. Internet Exchange, Inc. a/k/a MUS-IX in Dallas, and CyrusOne Internet

Exchange in Houston. Some accused functionality in this case involves Netflix's proactive caching

procedures. In its infringement contentions, CA specifically pointed to Netflix's procedure in

which Netflix fills content from OCAs at IXP locations to local OCAs deployed at ISP locations.[41]

As an example, Netflix has confirmed ████████████████████████████████████████

████████████████████████████████████████████.[42] Because

Netflix's OCAs at IXP facilities just outside the Eastern District work cooperatively with OCAs

in the Eastern District to perform accused functionality, the IXPs, like the ISPs, have relevant

information documenting the amount of content that Netflix streams to subscribers in this District.

Amazon Web Services (AWS) is also an important third party to this lawsuit that has

significant engineering operations in Texas, including in both Austin and Dallas.[43] AWS

documents are relevant to this case because much of the Netflix functionality that is accused of

infringement is implemented on hardware and services provided by AWS under agreements with

Netflix.[44] The Netflix Titus system, for example, which is accused of infringing U.S. Patent No.

8,656,419, operates within the AWS environment.[45] Likewise, Netflix's infringement of U.S.

---

[40]  *See* **Ex. 16**: Defendant Netflix's First Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, at 8.

[41]  **Ex. 35**: Wynne Dec. ¶ 9.

[42]  **Ex. 10**: ████ Dep. II, at 115:11–116:2.

[43]  AWS posts numerous job openings for software engineers in both Dallas and Austin.

[44]  **Ex. 35**: Declaration of Richard L. Wynne, Jr. (July 13, 2021) (Wynne Dec.) ¶ 7.

[45]  *Id.*

Patent Nos. 9,402,098 and 10,911,938 is done in part on AWS.[46]

As part of the venue-discovery process, CA requested that Netflix produce its agreements with AWS and that it identify the AWS personnel and teams in Texas with whom Netflix works. Netflix refused initially, but after CA filed a motion to compel, Netflix agreed to produce the AWS agreement "with financial terms redacted." When Netflix produced its AWS agreements, however, it was apparent that far more than the financial terms had been redacted. Indeed, some sections were redacted in their entirety, and Netflix's corporate representative admitted that ███████

████████████████████████████████████████████████████

████████████████████████████.[47] Despite this, Netflix's corporate representative ██████

████████████████████████████████████████████████████

███████.[48] He could not answer any questions ███████████████████████████

████████████████████████.[49]

The AWS systems and services on which Netflix has built and deployed accused Netflix systems are relevant to CA's claims in this case. CA has determined that AWS has personnel in Texas with knowledge about these AWS systems and services used by Netflix.[50] Netflix's wholesale redaction of its AWS agreement does not change the fact that those AWS personnel certainly have relevant evidence in Texas.

Netflix has not shown that any evidence likely to be used at trial is available in the Northern District of California. And Netflix's "potentially relevant" evidence should be weighed against the

---

[46] *Id.*

[47] **Ex. 10**: ███ Dep. II, at 165:4–8; *see* **Ex. 37**: Amended and Restated ██████████ ████████████████████████.

[48] *Id.* at 165:10–19.

[49] *Id.* at 166:2–15.

[50] *See* note 56 below and accompanying text.

relevant evidence from ISPs, IXPs, and AWS in Texas and this District. This factor weighs against transfer; at most, it is neutral.

### 2. Availability of Compulsory Process

The focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary. *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14cv15-JRG, 2014 WL 3835421, at *2 (E.D. Tex. Aug. 1, 2014). As with physical evidence, it must be likely those witnesses will testify at trial: "[F]or the Court to meaningfully assess the weight that should be attached to a third-party witness, *it is incumbent upon the advancing party to demonstrate the likelihood of that witness actually testifying at trial.*" *Realtime Data LLC v. Dropbox, Inc.*, No. 6:15cv465-RWS-JDL, 2016 WL 153860, at *7 (E.D. Tex. Jan. 12, 2016) (emphasis added).

### a. Netflix has identified no third-party witnesses who have relevant information or are likely to testify at trial.

Netflix identifies 13 third-party individuals who allegedly live in the Northern District of California, and who "might have relevant information" and "may provide testimony." Mot. at 18–19. They include: six attorneys who prosecuted the patents-in-suit; four prior-art inventors; and three former Netflix employees.[51] Netflix does not contend any of these individuals will likely be called to testify at trial.

In fact, the information that most of them allegedly have is not relevant to any issues in this case. After CA sued Netflix in this District, and just days before filing its Motion, Netflix filed a declaratory-judgment action against CA in the Northern District of California seeking a judgment that the patents at issue in this case are not infringed. *See Netflix, Inc. v. CA, Inc.*, No. 3:21cv3649,

---

[51] Netflix also states that Docker employees would "likely be outside the subpoena power of this Court" because Docker is headquartered in the Northern District of California. Mot. at 19. But during deposition, Netflix's corporate representative refused to provide the names of any Docker employees who are potential trial witnesses. **Ex. 10:** ███ Dep. II, at 64:12–21.

Complaint for Declaratory Relief, ECF No. 1 (N.D. Cal. May 14, 2021). If Netflix considered invalidity and inequitable conduct to be trial-worthy issues with respect to the patents, it would have sought judgment on those grounds as well. But it did not.

That Netflix did not seek judgment that the patents are invalid or unenforceable indicates that Netflix does not believe those issues are relevant. More to the point, there is no reason to assume that prior-art inventors, who presumably would testify regarding invalidity, or the attorneys who prosecuted the patents, who presumably would testify about unenforceability, will have any relevant testimony to present at trial in this case. They should not be considered in the analysis of this factor. *See, e.g., Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16cv693-JRG-RSP, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017) ("The Court discounts these prior-art witnesses because Defendants have failed to specifically allege why their testimony is important."); *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17cv443-JRG, 2017 WL 3704762, at *12 (E.D. Tex. Aug. 28, 2017) ("Without further information with respect to the likelihood that any of these prosecuting attorneys should testify, the Court does not give weight to these arguments.").[52]

Further, even assuming for the sake of argument that Netflix's potential third-party witnesses have relevant information, Netflix can get that information by deposing them in California. Although "there may be intangible benefits to live testimony over testimony by deposition," Netflix "has not specifically addressed how it would be prejudiced by presenting testimony from [the inventors'] deposition[s] in lieu of live testimony." *See Allergan Sales, LLC v. UCB, Inc.*, No. 2:15cv1001-JRG-RSP, 2016 WL 8201783, at *4 (E.D. Tex. Nov. 2, 2016).

---

[52] *See also Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16cv961 RWS-JDL, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017) (holding potential prior-art witnesses are "entitled to little, if any, weight in [the § 1404] analysis" because they "rarely, if ever, actually testify at trial").

**b. Relevant third-party witnesses live in or near this District.**

Local ISP personnel will have knowledge of the volume of traffic transmitted to and from the OCAs, which is relevant at least to damages. They also have relevant technical information about establishing and maintaining the peering connections between the ISP-based OCAs and OCAs at Netflix's IXP locations that are used for the content-fill operations accused of infringing the '794 Patent. Relevant ISP personnel include: ████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████.[53]

Like the ISP employees, ██████████████████████████ at Netflix's CyrusOne IXP, and ████████████████████ at Netflix's MUS-IX IXP, also have information relevant to CA's infringement claims.[54] These Dallas-based individuals will have relevant information concerning peering connections used for the accused content-fill operations between IXP-located OCAs and OCAs at Netflix's ISP partners, including those in this District. Similarly, Netflix's agreements with CyrusOne reference ██████████████ as the "███ ██████████████████████████████[55] ███████████████ will also have relevant information about the connections used for the accused content-fill operations.

Texas-based AWS employees also appear to have relevant information. As an example, Sean Shriver, who works for AWS in Dallas, is a NoSQL Solutions Architect and a leading expert on the AWS DynamoDB database.[56] Netflix uses the DynamoDB to support its A/B testing process

---

[53]   **Ex. 35**: Wynne Dec. ¶ 8.

[54]   *See* **Ex. 16**: Netflix's Supplemental Interrogatory Responses, at 8–9.

[55]   **Ex. 17**: CyrusOne ████████████████████████████████████ ███████

[56]   **Ex. 23**: Sean Shriver LinkedIn Profile ("I am Amazon Web Service's DynamoDB

to evaluate and update its "adaptive streaming and content delivery network algorithms"[57] CA has accused Netflix's A/B testing process of infringing the '938 Patent, making Mr. Shriver's knowledge and testimony relevant to CA's infringement case.

Each of these witnesses, including those who reside outside of this District, is subject to the Court's subpoena power and could be called to trial. The Court can require nonparty witnesses who live or work in Texas to travel more than 100 miles within the state if they would not, as a result, incur "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(ii). This Court has held that third-party witnesses who live in Dallas would not incur substantial expense if they were compelled to testify in Marshall. *See Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18cv14-JRG-RSP, 2018 WL 6589873, at *3 (E.D. Tex. Dec. 14, 2018). And if travel over 100 miles would impose substantial expense on the witness, the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment. Fed. R. Civ. P. 45 (notes to 2013 Amendment). If the Court determines that travel to Marshall would result in substantial expense, CA will agree to compensate the witness for that expense.

Here again, this factor weighs against transfer (or is at best neutral). Netflix has identified no relevant witnesses who are likely to testify at trial and for whom compulsory process would be unavailable in this District. And its conclusory statements regarding potential witnesses in the Northern District of California should be weighed against third-party witnesses in this District and neighboring districts who have relevant knowledge and testimony.

---

Specialist Solutions Architect, the first of a small group of experts dedicated solely to AWS's fully managed NoSQL database.").

[57] **Ex. 19**: Steve Urban, *It's All A/Bout Testing: The Netflix Experimentation Platform*, Netflix Technology Blog (Apr. 29, 2016), NETFLIX-CA-000014114; **Ex. 18**: Amazon DynamoDB, http:aws.amazon.com/dynamodb/, at 13; *see also* "A story of Netflix and AB Testing in the User Interface Using DynamoDB," available at: https://www.youtube.com/watch?v=k8PTetgYzLA;.

### 3.   Cost of Attendance for Willing Witnesses

Netflix contends that the Northern District of California is a more convenient venue for the 13 prior-art and patent-prosecution witnesses who allegedly live there, 21 Netflix employees, and four named inventors of the patents-in-suit. Mot. at 15–17. Netflix's position, which discounts its own employees and CA's employees in or near this District, is wrong.

#### a.   Prior-Art and Patent-Prosecution Witnesses

For the prior-art and patent-prosecution witnesses Netflix points to, there is no reason to assume they would be willing witnesses under this factor. Further, even if Netflix has not asserted invalidity or unenforceability of any of the asserted patents, which, as discussed above, it had not, Netflix cannot double-dip by counting those individuals under both factors. *See AGIS Software*, 2018 WL 2329752, at *3 ("It is common to see parties attempt to have this Court double- or triple-count witnesses for purposes of evaluating the convenience of a forum. . . . These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis.").

#### b.   Netflix Employees

As to Netflix's employees, "it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012) (citation omitted). Moreover, Netflix does not state that it will likely call any of them at trial; it simply says that they have "potentially relevant information" and "may serve as witnesses." Mot. at 15–16. Again, this is not sufficient. *See Seven Networks*, 2018 WL 4026760, at *3 n.4 ("[V]enue analysis is concerned only with the presentation of evidence at and during trial.").

*Netflix* has numerous engineers and other employees in Texas and in the Eastern District of Texas with relevant knowledge about the accused Netflix systems and services. Yet Netflix's

motion to transfer fails to even mention any of these potential witnesses, instead listing only Netflix employees in Northern California. Courts have cautioned against this type of venue-fact shading, noting that a party "cannot simply 'cherry-pick' witnesses in order to present one venue as more convenient than another." *See CloudofChange, LLC v. NCR Corp.*, No. 6:19cv513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020). Crystallizing the point, Netflix's corporate representative refused to answer questions about ██████████████████████████████████████████████ ████████████████████████████████████ And he further refused to answer ███████████████████████████████████████████████[58]

Notably absent from Netflix's transfer motion are at least seven Netflix employees living in this District who appear to have relevant information:



Based on the information Netflix has provided, it appears just as likely that these East Texas employees have as much relevant information as the employees Netflix identified who live in the Northern District of California.

Netflix ignores other Netflix employees in Texas who likely have relevant information. ████████████████████████████████████████████████████████████████ ████████████████████ appears to be one of the Netflix employees most knowledgeable about

---

[58]   *See* **Ex. 10**: ████ Dep. II, at 47:9–48:17.
[59]   **Ex. 16**: Netflix's Supplemental Interrogatory Responses, at 14.

the accused Open Connect network. Netflix's own presentation materials identify him as the first

of five "OpenConnect Contact[s]." ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████.[60]

████████████████████████████████████████████████████████████████████████

██████████████████[61] As explained, Netflix uses A/B testing as part of its infringement of the

'938 Patent, so ████████ has knowledge of relevant information and is a likely witness.

In addition to ████████████████, the following Netflix employees are also based in

Texas and appear to have relevant knowledge: ████████████████████████████

████████; ██████████████████████████████████; ████████████

████████████; ██████████████████████████████; ████████████

████████████████████████████; ████████████████████████

████; and ██████████████████████████████████.[62]

### c. Named Inventors

Netflix is mistaken that four of the named inventors reside in the Northern District of

California. In fact, Raymond Medeiros[63] (now, Claire Medeiros) lives in Florida.[64] And although

Alexander MacInnis[65] may reside at least part time in the Northern District of California, records



---

[60]  *See* **Ex. 20**: Te-Yuan (TY) Huang, *Buffer sizing and AQM observations at Netflix* (May 23, 2019), at 1; **Ex. 21**: Emails between ████████████████████████████████████████
████████.

[61]  *See* **Ex. 19**: *It's All A/Bout Testing*.

[62]  ████████████████████████████████████████████████████████████████
████████████████████████████████  **Ex: 25**: LinkedIn Profile of David Brown;
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████

[63]  Named on the '419 Patent.

[64]  **Ex. 35**: Wynne Dec. ¶ 10.

[65]  Named on the '014, '098, and '938 Patents.

indicate that he also owns property Michigan and has a Michigan driver's license.[66] Further, Arya

Behzad[67] has stated that he is willing to testify at trial in Marshall if necessary. That leaves Michael

Malcolm[68] as a named inventor who resides in the Northern District of California and would

allegedly be inconvenienced by traveling to this District. This does not tip the scale in favor of

transfer, especially since Mr. Behzad and another inventor, John Walley,[69] have stated that they

are willing to come to trial in this District.[70]

Further, Netflix ignores the fact that at least one named inventor, Robert Hucik, lives in

Texas.[71] Mr. Hucik is within the subpoena power of this Court but not the Northern District of

California. Fed. R. Civ. P. 45(c)(1)(B)(ii). Other named inventors are scattered across the country

in locations like New York (Beau Croteau), North Carolina (Gregory Bodine, Thomas Quigley),

and Arizona (Mark Buer).[72] With the inventors in various locations, no forum is clearly most

convenient for inventor testimony at trial.

**d.  CA Employees**

While Netflix's motion cherry-picks Netflix employees in the Northern District of

California, it all but ignores the fact that Plaintiff CA, Inc. has an office in this District. If the Court

considers Netflix employees, the Court should also consider CA employees within this District.

Netflix has yet to file an answer, so CA does not have insight into the full range of issues

that might be implicated, but the following CA employees in the Eastern District have information

---

[66]  **Ex. 35**: Wynne Dec. ¶ 10.
[67]  Named on the '938 Patent.
[68]  Named on the '794 Patent.
[69]  Named on the '938 Patent. Mr. Walley lives in the Central District of California. **Ex. 35**: Wynne Dec. ¶ 10.
[70]  **Exs. 32** and **33**: Declarations of Arya Behzad and John Walley.
[71]  **Ex. 31**: LinkedIn profile of Robert Hucik.
[72]  **Ex. 35**: Wynne Dec. ¶ 10.

that may be relevant to technologies implicated by the patents-in-suit: ████████████

████████████████████████████████████████████████

████████████████.[73] These CA engineers have knowledge and expertise in distributed-computing systems, service-oriented architecture, and container deployments implicated by the '419 Patent. If Netflix's yet-to-be-made allegations require these witnesses to testify at trial, trial in Marshall would be more convenient than trial in California.

This factor does not support transfer.

### 4. All Other Practical Problems

In analyzing this factor, courts consider practical problems "that are rationally based on judicial economy." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 319 (E.D. Tex. 2019). Netflix contends that this factor favors transfer because a case currently pending before Judge Donato in the Northern District of California "involves the same defendant and accused technology." Mot. at 23. That case, however, involves different plaintiffs, different patents, different claims and claim terms, different prior art, different infringement contentions, and different accused technology. "Put simply, the two cases will be decided on entirely different evidence and different legal theories." *See Allergan Sales*, 2016 WL 8201783, at *2.

Judge Donato agrees. After Netflix filed its declaratory-judgment action against CA and Avago in the Northern District of California for the patents asserted here, it moved to consolidate that case with the action pending before Judge Donato, arguing that they were related cases.

Judge Donato rejected Netflix's assertions that the cases were related and denied Netflix's motion. *Broadcom Corp. v. Netflix, Inc.*, No. 3:20cv4677–JD, Related Case Order, ECF No. 125 (N.D. Cal. June 8, 2021). This factor does not favor transfer.

---

[73] *Id.* ¶ 4.

**B. The public-interest factors weigh against transfer.**

**1. Administrative Difficulties**

The relevant inquiry here is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Netflix admits that time to trial is shorter here than in the Northern District of California. Mot. at 25. Nonetheless, it contends this factor is neutral. But as this Court has held, the shorter time to trial here weighs against transfer. *See Uniloc USA, Inc. v. Apple Inc.*, No. 2:17cv258-JRG, 2017 WL 11553227, at *9 (E.D. Tex. Dec. 22, 2017) (holding this factor weighed against transfer because the "median time to trial in this District is several months faster than the Northern District of California"). The unrelated case pending in Judge Donato's court is telling in this regard. That case was transferred to the Northern District on July 10, 2020. Now, over a year later, the court has not even entered a scheduling order, no date has been set for a *Markman* hearing, and there is no trial date.[74] Without question, this case will proceed more expeditiously here than in the Northern District.[75]

**2. Local Interest**

"This factor considers the interest of the locality of the chosen venue in having the case resolved there." *Finalrod IP, LLC v. Endurance Lift Sols., Inc.*, No. 2:20cv189-JRG-RSP, 2020 WL 7396504, at *5 (E.D. Tex. Dec. 16, 2020). Netflix contends that the Northern District of California has a greater interest in this case because Netflix and CA are both headquartered there. Mot. at 24. Netflix acknowledges, however, that CA, Inc. maintains an office in this District, and it did not contest CA's allegations that Netflix is in the business of providing video content to

---

[74]   **Ex. 35**: Wynne Dec. ¶ 11.

[75]   In fact, Judge Donato recently stated that he could not reset a scheduled August 2021 trial in his Northern District of California court until *at least the third or fourth quarter of 2022*. **Ex. 34**: Hearing transcript, at 7, 8 in *Speck v. 3M Co.*, No. C 20-5845-JD (N.D. Cal. June 3, 2021) (emphasis added).

subscribers here. Indeed, that business is significant.

Over 3.16 million adults live in the Eastern District,[76] and according to a March 2020 survey, 52% of United States adults had a Netflix subscription.[77] Doing the math, it would appear that Netflix has over 1.5 million subscribers in this District. When asked during discovery how many subscribers were in the District, however, Netflix refused to provide this information, instead stating only ███████████████████████.[78] During deposition, Netflix's corporate representative could confirm only ███████████████████████████ ███████████████████████████, but when asked whether Netflix ████████ ████████████████████████, Netflix's representative responded, █████████[79] Netflix knows how pervasive its streaming service is, so its evasive answers and refusal to provide any information concerning the widespread use of the allegedly infringing technology by the local citizens of this District weighs against transfer.[80]

Indeed, while Netflix tries to distance itself from the services it provides to District residents, the fact remains that Netflix paid over $200 million in sales tax to the State of Texas from August 11, 2016, through August 11, 2020, a substantial portion of which must have been based on

---

[76] **Ex. 35**: Wynne Dec. ¶ 3.

[77] *See* **Ex. 36**: Share of adults with a Netflix subscription in the United States as of March 2020, Statista, https://www.statista.com/statistics/707542/netflix-subscription-adults-usa/.

[78] **Ex. 16**: Netflix's Supplemental Interrogatory Responses, at 11.

[79] **Ex. 10**: ████ Dep. II, at 140:3–21.

[80] Netflix's inability to say whether ██████████████████████████████████ is undermined by traffic information Netflix produced. ███████

██████████████████████████████████████████████████

**Ex. 35**: Wynne Dec. ¶ 6. Conservatively applying a rate of 3,000 MB/hour (3 GB/hour) for Netflix HD content results in ████████████ of Netflix content transmitted from District-based OCAs on just a single day. *See* **Ex. 7**: Buckeye Broadband, *How Much Data Does Netflix Use?*, https://www.buckeyebroadband.com/support/internet/how-much-data-does-streaming-netflix-use.

subscription sales to Netflix subscribers in this District.[81] Both the scale of Netflix's business and its infringing activities here give this Court a substantial interest in resolving this case. *See Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 801 (E.D. Tex. 2006) (explaining that the venue in which allegedly infringing products are sold has an interest in the litigation); *Garrett*, 429 F. Supp. 3d at (finding the Marshall Division had in interest in the dispute because the negligent entrustment at issue allegedly occurred in Marshall, even though the plaintiffs resided in Tyler).[82]

Netflix tries to analogize Plaintiffs' infringement claims to national sales of an accused product, but that comparison fails. *See* Mot. at 29. Netflix has done far more than release a product into the stream of commerce for nationwide distribution. Rather, Netflix has taken specific actions to install its accused Open Connect CDN in this District to benefit its subscribers in this District. It has provided OCAs to its ISP partners in this District for the purpose of providing its video-streaming services to give its subscribers in this District ███████████████████████

███████."[83] And Netflix accomplishes that goal by sending the OCAs to local ISPs:

> The overall mission of the program is to enable ISPs to provide a great Netflix experience for our mutual customers. We further this goal *by localizing Netflix traffic as close as possible to our members*, *limiting the network and geographical distances* that our video bits must travel during playback.[84]

Having made the business decision to implement its accused Open Connect CDN in the Eastern District of Texas to benefit subscribers in the District, Netflix cannot now disavow the local

---

[81]   **Ex. 15**: Declaration of Maria Mirkovski in Support of Netflix, Inc.'s Opposition to Plaintiff's Motion for Class Certification in *City of New Boston*.

[82]   Although the Court in *Garrett* ruled on a motion for inter-District transfer, the same transfer inquiry "appl[ies] as much to transfers between divisions of the same district as to transfers from one district to another." *Id.* at 317

[83]   **Ex. 10**: ███ Dep. II, at 148:25–149:9.

[84]   **Ex. 1**: Netflix Open Connect Overview, at 1 (emphasis added).

interests in adjudicating CA's infringement claims relating to the Open Connect CDN.

This factor does not favor transfer.

### 3. Familiarity with the Law and Conflict of Laws

The parties agree that these factors are neutral.

## C. Conclusion

Netflix conducts regular-and-established business in this District through OCA servers serviced by ISPs acting as Netflix's agents. Venue is proper here. Netflix must prove that venue is *clearly* more convenient in the Northern District of California to transfer the case there. *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20cv3-JRG, 2020 WL 6889173, at *2 (E.D. Tex. Nov. 24, 2020). Netflix does not meet that burden.[85] As other courts have recognized, while "[t]he record before the court reveals that Netflix is a global corporation engaging in business throughout the United States[,] Netflix has not shown a unique or unexpected burden as required to support transfer under the relevant standard." *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. CV 17-1692-JFB-SRF, 2018 WL 4941785, at *4 (D. Del. Oct. 12, 2018), *report and recommendation adopted*, No. CV 17-1692-CFC-SRF, 2018 WL 5886172 (D. Del. Nov. 9, 2018) (docket citation omitted).

CA therefore asks the Court to deny Netflix's motion in its entirety.

---

[85]   Two of the four private-interest factors and two of the four public-interest factors weigh against transfer while the remainder are neutral, at best. None of the eight factors weighs in favor of transfer.

Respectfully submitted,


/s/ Richard L. Wynne, Jr.
Bruce S. Sostek, Attorney-in-Charge
  State Bar No. 18855700
  bruce.sostek@tklaw.com
Richard L. Wynne, Jr.
  State Bar No. 24003214
  richard.wynne@tklaw.com
Adrienne E. Dominguez
  State Bar No. 00793630
  adrienne.dominguez@tklaw.com
Austin Teng
  State Bar No. 24093247
  austin.teng@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (fax)

Samuel F. Baxter
  State Bar No. 01938000
  sbaxter@mckoolsmith.com
Jennifer L. Truelove
  State Bar No. 24012906
  jtruelove@mckoolsmith.com

**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
903.923.9000
903.923.9099 (fax)

ATTORNEYS FOR PLAINTIFFS CA, INC. and
AVAGO TECHNOLOGIES INTERNATIONAL SALES
PTE. LIMITED

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed via the Court's ECF system on July 13, 2021, and served via electronic mail on all counsel of record on that date.

/s/ Richard L. Wynne, Jr.
Richard L. Wynne, Jr.

**CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL**

I hereby certify that, on July 13, 2021, Plaintiffs filed a motion to seal the foregoing document.

/s/ Richard L. Wynne, Jr.
Richard L. Wynne, Jr.